WILLIAM McCORMICK, Appellant, v. PATRICK FITZMORRIS, ANN SHEA, AND MARY DORAN, Respondents.

1. *Conveyance—Execution—Sheriff's Deed—Evidence.*—Under the statute R. C. 1855, p. 748, § 56, the recitals in the deed of the sheriff conveying the land of the defendant in the execution are presumptive evidence of the existence of the judgment and execution and the other facts recited in the deed, and in an action of ejectment the plaintiff need not produce the judgment and execution. Holmes, J., *dissenting.*

2. *Conveyances—Alteration.*—An alteration apparent on the face of a deed is in law presumed to have been made prior to, or contemporaneously with, the execution of the instrument, unless peculiar circumstances of suspicion are patent.

3. *Ejectment— Outstanding Title— Mortgage.* —A defendant in ejectment, in possession of land under a deed of trust or mortgage which has become forfeited by the default of the debtor, may protect his possession by virtue of his outstanding title under the deed of trust or mortgage.

### Appeal from St. Louis Land Court.

This was an action of ejectment brought by the appellant against the respondents for a lot of ground in the city of St.

Louis, and was tried by the court. The plaintiff read in evidence—

1. A deed from the sheriff to the plaintiff in the statutory form, reciting among other things a judgment dated February 10, 1862, rendered in the St. Louis Circuit Court in favor of the plaintiff against John Doran, and an execution on said judgment dated March 24, 1862, and stating a levy by the sheriff and sale to the plaintiff on April 17, 1862, for $100. This deed was recorded December 9, 1863.

2. Deed from Samuel W. Brown to said John Doran, dated June 12, 1857.

3. Deed from John R. Shepley to the said Samuel W. Brown, dated October 11, 1848.

4. Also a deed of trust, in the usual form, from said Doran and his wife to Morgan Casey's trustee, dated August 11, 1860, to secure three notes of said Doran in favor of said Casey, all of said date, one for $500 at one year, and the others each for $25 at 6 and 12 months respectively. This deed was recorded August 11, 1860.

5. Also a deed of trust, in the same form, from said Doran and wife to the defendant, Ann Shea's trustee, dated April 19, 1861, to secure a note of said Doran in favor of the said Ann Shea, for $1500, cash loaned, of same date as deed, and payable in two years. This deed was recorded 22d April, 1861.

6. Also a deed from Ann Shea's trustee to the said Ann Shea, conveying the said property to her for the price and sum of $1525. Sale on August 29, 1863. This deed was recorded August 29, 1863.

It was proven that Fitzmorris was in possession as tenant of Mrs. Shea. It was proven that the said Ann Shea had bought, and at the time of the trial still held, the Casey note, and that there had been no sale under the first deed of trust to secure the same. Several witnesses, experts, were sworn by the plaintiff, who stated their opinion that the deed to Ann Shea's trustee had been altered in the description of the note from ten to two years, so as to make it read two years in-

stead of ten; but as to who altered it, or whether it was done before or after it was executed, none of these witnesses could say.

A. C. Bernoudy, county recorder, testified as follows:— "The deed here shown me from Doran and wife to Ann Shea's trustee has been changed. It has the appearance of having been done by another penman than the original writer of the deed. The alteration occurs in the description of the note; the word "ten" years has been changed so as to read *two* years. This deed has been recorded in the book which I hold in my hand."

Plaintiff's attorney then offered in evidence the record of the deed in question, to show that the description of the note as recorded shows that it was given for ten instead of two years, and asks the witness to read it. Objection by defendants, and objection sustained and exception by plaintiff.

On cross-examination, Bernoudy said: "I did not record the deed in question myself; it was done by a clerk who is absent from the city at present. I don't know when the deed was altered; it may have been done at the time it was written. I don't know anything about it—when it was done, or by whom it was done."

Mr. McDonald, attorney of the plaintiff, gave evidence of a conversation had by him with Mrs. Shea for the purpose of showing that the loan by her to Doran was for ten years instead of two.

Plaintiff then asked the following instructions:

1. The recitals in the deed of John H. Andrews, sheriff of St. Louis county, to Wm. McCormick, are evidence of the judgment and execution therein mentioned, no objection having been made.

2. The recitals in the copy of the execution which accompanied said sheriff's deed will be received as evidence of the facts therein stated, no objection having been made to the same.

3. If the court, sitting a jury, believes from the evidence

in the cause that the deed of trust from Doran and wife to Shea's trustee, dated April 19, 1861, has been materially altered or changed since its execution and delivery, then the verdict will be for the plaintiff.

These instructions were refused, and the plaintiff excepted.

On the request of the defendants, the following instructions were given, to which the plaintiff excepted :

1. Before the plaintiff can recover in this cause, it is necessary that the judgment and execution under which the sheriff's sale was made, and the validity of such judgment and execution, should be established by competent evidence in the cause; and the mere recital in the plaintiff's deed that there was a judgment and execution is not sufficient for that purpose.

2. If the court, sitting as a jury, believe from the evidence that Doran and wife executed the deed of trust dated April 19, 1861, whereby they conveyed the property described in the petition to Timothy Scanling in trust to secure an indebtedness to one Shea, mentioned in said deed, and that said deed was filed for record May 22, 1861; and that in discharge of the trust thereby created, and in pursuance of said deed, Scanling exposed said property for sale, and that said Shea became the purchaser thereof, and that said Scanling in discharge of said trust executed the deed dated August 29, 1863, conveying said real estate to said Shea ; and that subsequent to the execution and delivery of said deed of trust McCormick recovered his judgment against the said Doran, and execution was issued thereon, and the property described in the petition was sold, and McCormick became the purchaser, and the sheriff executed the deed in evidence to said McCormick, then the verdict ought to be for the defendants.

3. If the deed from Doran's trustee to Shea, dated August 29, 1863, was filed for record prior to the deed of Doran, by the sheriff, to plaintiff McCormick, then the former deed has preference, and carries the title in preference to the latter, unless it appears from competent evidence in the cause that

the sheriff sold under a valid judgment recovered before the deed of Doran and wife to Shaw's trustee, dated April 19, 1861, was recorded.

The court rendered judgment for the defendants. The plaintiff moved for a new trial, &c., and appealed.

*Day* and *R. S. McDonald*, for appellant.

I. The sheriff's deed offered in evidence contained the recitals required by law, and was *prima facie* evidence of the legality of the sale and the proceedings thereon, and that it had been made in accordance with law, and also of the judgment and execution, and should have been so received—R. C. 1855, p. 748, § 56; Gwynn on Sheriffs, 339; Longworth v. Bk. of U. S., 6 Ohio, 536; Hardy v. Heard, 15 Ark. 186; Newton v. State Bk., 14 Ark. 10; Lackey v. Lubke, 36 Mo. 123; Tanner v. Stine, 18 Mo. 583; Perkins v. Dibble, 10 Ohio, 437.

II. In any case, the defendant, by permitting the sheriff's deed to be offered in evidence without objection, waived any right he might have to object to it for want of proof of the validity of the judgment and execution—Wright v. Sharp, 1 Salk. 288; Bank of Mo. v. Hall, 7 Mo. 276.

III. The evidence in the case was of a character to throw the burden upon the defendant to explain the alteration in the deed of trust from Doran and wife to the trustee of Shea, and through which the defendant claimed title, and until explained invalidated the title to the property as against the plaintiff—Briggs v. Glenn, 7 Mo. 572; Mathews v. Coalter, 9 Mo. 705; 1 Greenl. Ev. 629, § 564; 1 Phil. Ev. 606, § 565 & n.; 3 id. 461.

IV. The record of the deed of trust should have been admitted in evidence as being competent evidence tending to show the alteration in the deed of trust regarding the description of the note to have been made subsequent to the recording of the same.

V. The fact that there is an outstanding encumbrance on said property by way of deed of trust affords no defence against

this plaintiff at least, unless the trustee chooses to assert his title ; and unless he does this, the title of the trustee is a mere dry trusteeship for the protection of the debt secured, and is in abeyance until enforced—1 Hill on Mort. 105–9; Ellison v. Daniels, 11 N. H. 279–80.

*A. Hamilton* and *C. G. Mauro*, for respondents.

I. Whether it was correct to require the plaintiff to show the judgment and execution is unimportant, as there was a perfect defence to the case. If the sale under the second deed of trust to the defendant Mrs. Shea was a nullity, still the legal title was outstanding in the trustee—Jackson v. Jacoby, 9 Cow. 126 ; Smith v. McGowen, 3 Barb. (S. C.) 405. If this was not so as to that deed, it certainly was so as to the first. Both of these deeds were prior to the judgment; and the note, to secure which the first deed of trust was given, was due some time before the judgment was recovered, 'and was held by Mrs. Shea ; whose position was that of a mortgagee in possession after forfeiture, and who was no more liable to be turned out of possession by the plaintiff than by Doran himself. The plaintiff had not even the naked legal possession of his debtor to levy upon—11 Am. L. Reg. 655–6; Meyer v. Campbell, 12 Mo. 616 ; Den v. Wright, 2 Hal. L. R. 178 ; Walcop v. McKinney, 10 Mo. 229 ; 1 Hill. Mort. 111, § 33, and cases in note ; Page v. Robinson, 10 Cush. 102.

II. As stated, both deeds of trust were introduced by the plaintiff. The whole inquiry as to whether there had been an alteration, and if so, whether the alteration was of such a character, or so manifest from the face of the deed, as to put the defendant Mrs. Shea to proof explaining it, was before the judge who tried the cause, whose finding will not be disturbed. There is nothing in the record to show that the finding or the result of the inspection by the court below was erroneous. The record of the deed proposed to be read by the witness Bernoudy is not exhibited or so described in the bill of exceptions as to enable the court to see for itself

whether it contained the word "ten." Even this witness left it in doubt as to whether it contained that word. On his cross-examination, he says, "I don't know when the deed was altered; it may have been done at the time it was written." The presumption is that this omitted evidence would have supported the judgment—1 Greenl. Ev. § 564 ; Mathews v. Coalter, 9 Mo. 710 ; Ellison v. R.R. Co., 36 Miss. 591 ; Smith v. McGowen, 3 Barb. (S. C.) 405 ; Cole v. Hill, 44 N. H. 232 ; Maybee v. Sniffen, 2 E. D. Smith, § 11.

WAGNER, Judge, delivered the opinion of the court.

This was an action of ejectment brought by the appellant against the respondents for a lot of ground in the city of St. Louis, and was tried by the court without the intervention of a jury.

The appellant claimed title by virtue of a sheriff's deed founded on an execution and sale thereunder against one Doran, the former owner of the premises. The judgment on which the execution was issued was rendered on the 10th day of February, 1862 ; the sale was made on the 17th day of April next thereafter ; the deed was made on the same day, and filed for record December 9, 1863. The respondent was in possession of the lot, and to resist the action of the appellant introduced in evidence a deed of trust from Doran and wife to one O'Brian, as trustee to secure the payment of certain promissory notes due to Morgan Casey, which deed was dated August 11, 1860, and filed for record the same day. Evidence was given showing that the principal note on which this deed was based had been assigned to respondent. Also a deed of trust dated April 19, 1861, and filed for record on the 22d day of April, 1861, from Doran and wife to Timothy Scanling in trust for the respondent to secure the payment of fifteen hundred dollars, money loaned by respondent to appellant. Both deeds conveyed the property here in controversy to the trustees for the purposes specified. The last deed, for the benefit of the respondent, was founded on a note due and payable two years after date.

Upon default being made in the payment of the note when the same became due and payable, Scanling, in pursuance of the deed of trust, advertised the property for sale, and respondent became the purchaser thereof, and received a deed from the trustee which is dated August 29, 1863, and filed for record on the same day, which deed was also given in evidence.

The sheriff's deed, and the execution by virtue whereof the sale was made, was admitted in evidence without any objection; and the appellant's counsel requested the court to declare the law to be, that the recitals in the deed of the sheriff of St. Louis county were evidence of the judgment and execution thereon mentioned, no objections having been made. The court refused to so declare the law, and the appellant excepted. The deed contained the statutory recitals, and the main question is the proper construction to be placed upon the 56th section of the "Act concerning executions"—R. C. 1855, p. 748. That section requires the officer selling real estate to make to the purchaser a deed "reciting the names of the parties to the execution, the date when issued, the date of the judgment, order or decree, and other particulars as recited in the execution; also, a description of the property, the time, place and manner of sale; which recital shall be received as evidence of the facts therein stated."

Without the statute has changed a well recognized and long established rule of law, the decision of the court was unquestionably right; for the doctrine has been uniform in regard to the sale of lands by a sheriff, that his deed is inadmissible as evidence unless the judgment and execution under which the sale is made are produced to show the sheriff's authority to sell.

The burden was always devolved on the purchaser of inquiring into the power and means by which the property was subjected to sale, and he acquired no right or interest to the land when the sheriff sold without legal authority—Den v. Morse, 7 Hals. 331; Bybee v. Ashby, 2 Gil. 151; Wilson v. Comiere, 2 Johns. 280; Vorhees v. U. S. Bk., 10 Pet. 458.

But the Legislature possessed the undoubted power to change this rule of evidence, and to make the recitals in the sheriff's deed at least *prima facie* or presumptive evidence of the facts therein recited.

Does the act accomplish this end or object to the full extent contended for? The section is indefinite, and vaguely framed; and if literally and strictly construed, would make the recital in the sheriff's deed evidence, not of the existence of the judgment, but only of the date of the judgment. This strict and rigid construction would leave the law not materially altered from what it was previous to the legislative enactment. We must suppose that the Legislature intended to make a change in the rules of evidence in this particular; and if we can arrive at the true intent and meaning, it is our duty to give the act such interpretation as will carry out that meaning and intent.

This statutory provision was inserted in the R. C. of 1845, and was literally copied in the Ark. Dig. of 1848, and has been directly passed upon by the Supreme Court of Arkansas. The case of Hardy v. Heard et al., 15 Ark. 184, is an adjudication precisely in point. Hempstead, J., in delivering the opinion of the court, said: "The manifest design of the statute was to relieve the purchaser from the necessity of producing a judgment and execution, levy and advertisement; or, in other words, to excuse him from the duty of proving in the first instance that the law had been complied with; and leaving it to the party who would contest the sale to establish its invalidity. The statute rests on the fundamental principle that public officers, executive, judicial and ministerial, are presumed to discharge their duties until the contrary is made to appear; and on the further ground that there is no better method of encouraging fair judicial sales, and protecting *bona fide* purchasers, than to afford all reasonable facilities to enable them to reap the fruits of their purchases."

A deed in compliance with the statute would of course be nothing more than *prima facie* evidence; and a deed not

McCormick v. Fitzmorris et als.

containing the recitals mentioned in the statute, or not show-
ing a compliance with the law on its face, would be wholly
inadmissible as evidence under the statute.   This we are
inclined to think is the true construction to be placed upon
the statute.   It merely shifts the onus or burden of proof.
It makes the deed *prima facie* or presumptive evidence of
the recitals contained in it, and allows it to be admitted in
evidence without any accompanying proofs, subject to be de-
stroyed or invalidated when attacked by a party resisting it.
To confine the recital to evidence only of the date of the
judgment, is giving it a scope and meaning more narrow and
technical than was intended by the law-makers.   If it is evi-
dence of the date and existence of the judgment, the judg-
ment must be presumed to be valid till it is impeached.
With this view of the proper construction and meaning of
the statute, it follows that the instruction prayed for should
have been granted.

Upon the trial, the deed of trust from Doran and wife to
Scanling, as trustee for respondent, was admitted in evidence
without any objection being made or exception taken ; and
the appellant asked the court for an instruction, that if it
believed from the evidence in the case that the deed had been
materially altered or changed after its execution and deliv-
ery, then the verdict should be for the appellant.   This in-
struction the court refused.   The alleged alteration consisted
in changing the word "ten" to two, so as to make it due and
payable two years after date instead of ten years.   Several
witnesses were sworn who testified that an alteration had
taken place, and that it had been made with a different ink
and in a different handwriting from the balance of the in-
strument; but when it was made, whether before, or after,
or contemporaneous with the execution of the deed, they did
not pretend to know.

The law in regard to alterations appearing on the face of
a written instrument is perhaps not quite settled.   Consid-
erable diversity is exhibited by the authorities.   It is un-
doubtedly true that every alteration of a written instrument

is calculated to arouse more or less suspicion, and detract from its credit; and where the ink and handwriting are different, it may require examination. In Morris v. Vanderen, 1 Dall. 67, and Prevost v. Gratz, 1 Pet. C. C. 364, it was held that an alteration should be presumed to have been made after the execution of the instrument; but this has been almost universally overruled in this country; as Greenleaf remarks, it is contrary to the principles of the law, which never presumes wrong. And as a general rule, if any presumption at all is indulged, the law will presume that the alteration was made before, or at least contemporaneous with the signing of the writing, unless peculiar circumstances of suspicion are patent on its face; and even then the whole question is one for the jury to settle upon all the facts, when and where and with what intent the alteration was made—Mathews v. Coalter, 9 M. 696; Smith v. McGowen, 3 Barb. 404; Cole v. Hills, 44 N. H. 227; Bowers v. Jewel, 2 N. H. 543; Gorch v. Bryant, 1 Shep. 390; Beaman v. Russell, 20 Vt. 205. The instrument in this case was before the court sitting as a jury; there was no evidence tending to show that any alteration had been made after its execution and delivery, as assumed in the appellant's instruction; and the instruction was therefore rightfully refused. The court was in possession of the deed, together with all the facts and circumstances surrounding it, and the finding of the court must be deemed conclusive.

The next question is, was the appellant injured by the action of the court in refusing to give effect to the sheriff's deed, as requested by his instruction; or, in other words, had the deed been admitted to convey all the title which the sheriff could convey by reason of the sale, with a valid judgment regularly produced, would he have been in any better situation? The respondent was in possession, and if there had been no sale under her deed of trust, it was subsequent to forfeiture, and she would have had such an outstanding title as would have prevented a plaintiff from recovering in ejectment—Meyer v. Campbell, 12 Mo. 603; Walcop v. Mc-

Kinney, 10 Mo. 229; Sutton v. Mason, 38 Mo. 120. But the respondent had more; she had the possession, and held by virtue of a sale made under a lien which was prior to the judgment; she had, therefore, the better title.

The judgment is affirmed. The other judges concur; Judge Holmes dissenting as to the admissibility of the sheriff's deed without producing the judgment.

### Judge Holmes dissenting.

I concur in affirming the judgment; but I dissent from the opinion of the court on the question of the sheriff's deed and the recitals therein being evidence of the execution and judgment, so as to dispense with the production of the record of the judgment and execution. In my opinion, the defendant's instruction on this point should have been given. The sheriff's deed was admitted in evidence. I have no doubt the deed was admissible in evidence; but the instruction raised the question of the effect of the deed on the title, when admitted in evidence, whether it amounted alone to full proof that the title and estate of the judgment debtor in this land had thereby been conveyed and passed to the purchaser at the sheriff's sale. My conclusion is, that it did not amount to such full proof.

It is conceded by all that, at common law, the production of the record of the judgment and execution would have been indispensable; but it is maintained that the fifty-sixth section of the statute concerning executions has changed the common law rule, has made the deed and the recitals in it *prima facie* evidence of the existence of the judgment and execution, and thrown upon the other side the burden of proving the contrary. I cannot think that such is the proper effect of the words of the statute, nor that such was the intention of the Legislature. The facts required to be recited are simply *the names of the parties* to the execution, the *date* of it, *the date* of the judgment and *other particulars* of it as recited in the execution, the description of the property, and

the time, place and manner of the sale; and the deed is to, be evidence of the facts so recited and stated therein.

Neither the existence of a valid judgment creating a lien upon the land, nor the existence of a valid execution, nor of a levy made under the execution whereby a valid lien may have been created on the land, is stated, or required to be stated and recited therein, but only the names of the parties, the dates, and the other particulars of the judgment as recited in the execution. The object of the recitals, as it seems to me, was merely to identify the deed as a deed executed in pursuance of a sale made under an execution and judgment of those dates, parties, and other particulars; so that when the record of the judgment and execution should be produced in evidence also, it might then be seen that the deed had been executed in virtue of a sale made by authority of that judgment and execution, and not of some other. A reason for this provision may be found in the difficulty, without some recitals of this kind, of identifying the sheriff's deed, the execution, and the judgment, when produced in evidence together, as connected parts of the same series of facts and the same chain of proof. Questions of variance are thereby avoided. But if the deed and the recitals are to have the effect of being evidence and proof, in the first instance, of the existence of a valid judgment and execution of those dates and parties, then the deed becomes the standard by which a variance is to be ascertained; and if the judgment and execution, when the proper evidence of them should be produced by the other party, should happen to vary materially from the recitals in the deed, this evidence —that is to say, the judgment and execution—would have to be excluded, and not the deed. The plaintiff might effectually answer and say, " that is not the judgment and execution to which my deed refers"; and it would be impossible for the defendant to prove a negative. Would not this subvert the legal and fundamental principles of the action of ejectment, and overturn well established rules of property ?

McCormick v. Fitzmorris et als.

Under the operation of such a rule a man's real estate might be taken away from him by the supposed act of the law, and by a sheriff's deed purporting to be made by authority of law, when no such act or authority ever existed in fact.

If it be so enacted, there may be no help for it but in a repeal of the statute. But has it been so enacted? The act does not declare what shall be the effect of the deed on the title. It does not declare in terms that either the deed or the recitals shall have the effect to prove, in the first instance, the existence of a valid judgment, or a valid execution, without the production of the only evidence known to the law by which such facts can be proved and established. It does not say that the production of the record of the judgment and execution may be dispensed with. It is argued that the recitals of the names of the parties and the dates implies the existence of a judgment and execution having these dates and parties. I do not deny that the existence of some judgment and some execution of those dates and parties is in a manner supposed and argumentatively implied; but the burden of proof rests on the plaintiff in this action to show affirmatively a complete chain of title, and to prove as one essential link in that chain the existence, not only of some judgment, but of a valid and not a void judgment—not only of some execution, but of a valid execution, having those dates and parties. The plaintiff undertakes to prove by competent evidence that the title and estate of the judgment debtor in the land has been passed and transferred to the purchaser at the sheriff's sale by the act and authority of the law. It is only by virtue of the lien of a valid judgment, or by virtue of a lien created by a valid levy of an execution on the land, that the title can be acted upon and transferred in this manner. Without such lien, the sheriff's deed can have no operation on the title. The deed may be evidence of a sale made as recited, but a sale merely does not pass the title; it may be evidence of the existence of some execution, of the date and parties named, but that alone would not pass the title; and it may be evidence of

some judgment, or even of the identical judgment, but that with all the rest and without more would not show a title passed. It would still remain to be proven that the judgment which existed was a valid and not a void judgment. The only way known to me by which this vital and essential fact can be proved, on an issue of this kind, is by the production of the record, or an exemplification of the record and proceedings in the cause on which the judgment is rendered, in order that it may be seen that the parties were served with process, or otherwise brought before the court; that the court had jurisdiction of the parties and of the cause of action, and had competent authority to render such a judgment; without all which the judgment would be null and void. Had the plaintiff, in addition to the recitals in the deed, produced an exemplification of the judgment only, that would certainly have been better evidence, and proved more, than the recitals in the deed; but even that would not have been enough. It would still have come short of full proof. In a case like this, the whole record which concerns the matter in question must be produced—4 Com. Dig., tit. Evidence, A. 4; 1 Greenl. Ev. § 511. A record is of so high a nature that it cannot be proved but by the record itself, or an exemplification or a copy thereof—Ib. tit. Evidence, A. 4. The judgment here is a muniment of title, operates *in rem* and creates a title, and the record of it is admissible, between these parties, on the same principles that a conveyance which transfers title from one to another is admissible—1 Greenl. Ev. § 539 ; Fowler v. Savage, 3 Conn. 96 ; Bau v. Gratz, 4 Wheat. 213. And when the fact is directly in issue, nothing less than the whole record can prove the existence of a valid judgment.

It is said that when the existence of a judgment is shown by the recitals, the law will presume that it was a valid judgment. The law presumes nothing in favor of the plaintiff on an issue like this. The burden rests on him to prove his title; and if he fail to make full proof, he must go out of court. I conceive that no presumption of law can be made

concerning it, neither of its validity nor of its nullity. The case would simply be, that the existence of a valid judgment was not proved. When the plaintiff claims as a purchaser at a sheriff's sale, made by virtue of an execution *against the defendant in ejectment*, it is sufficient to show the execution and the proceedings under it, without producing the record of the judgment ; for the execution may be presumed to be valid as against him, for the reason, that, being a party to it, he might have moved to set it aside if not issued upon a valid judgment : but when the action is *against a stranger*, as in this case, no such presumption can be made, and the plaintiff must prove the judgment as well as the execution. —2 Greenl. Ev. § 316.

Moreover this statute, if interpreted as claimed for the plaintiff, would be in derogation not only of the ordinary rules of evidence, but of well established principles of the common law, governing titles to real estate, and therefore to be construed strictly ; but, in my view, there is no need of invoking this rule of construction here, for the language of the act, as it seems to me, does not at all require nor fairly admit of the construction contended for.

The case of Hardy. v. Heard, 15 Ark. 184, is cited in support of the contrary opinion; it is a decision directly on the point, but it does not go at large into the reasons, and no authorities are cited. I can only say that neither the decision, nor the reasons given in support of it, are at all satisfactory to my mind, and I cannot believe it is a sound and correct declaration of the law on the subject.