as the ruling already made is decisive of the case.

The judgment is affirmed. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.

---

KENNEDY *et al.* v. SIEMERS *et al., Appellants.*

In Banc, February 5, 1894.

1. **Practice:** INTERLOCUTORY ORDER: BILL OF EXCEPTIONS. Where an interlocutory order in a suit to redeem from a sale under a deed of trust contains no finding or declaration of the rights of the parties to redeem and the question is left open until the final hearing with the right reserved to either party to introduce additional testimony and the order merely directs a reference that an account may be taken, there is no ruling to which an exception can be taken, and hence exceptions thereto need not be filed at the same term of the court.

2. **Deed of Trust:** IRREGULAR SALE: EQUITY OF REDEMPTION: ESTOPPEL. Defendant agreed in writing with grantors in a deed of trust to advance money to pay other debts, buy in the land at a trustee's sale, take a deed in his own name and convey the land to the grantors if they repaid the advancements within two years. The sale under the deed of trust was irregular for the want of the requisite notice. *Held,* that, notwithstanding such irregularity defendant acquired the legal title subject to the equity reserved to the grantors by the contract and that the latter and those who acquired their rights with notice of the contract were estopped to assert an equity of redemption after the expiration of the two years fixed by the contract.

3. ———: CONTRACT: SIGNATURE BY ONE PARTY. Although the grantors in the deed of trust did not sign the contract, yet they were bound by it inasmuch as they received benefits under it and one of them made a written assignment of it in which the other co-operated.

4. ———: EQUITABLE RIGHTS: NOTICE. Defendant was in possession of the land, his deed from the trustee and his contract with the grantors were of record and the two years for redemption under the contract had passed when the grantors for a small consideration quitclaimed to plaintiff. *Held* that the purchase was made with full notice of defendants' rights.

| | |
|---|---|
| 120 | 73 |
| 120 | 428 |
| 120 | 73 |
| 125 | 114 |
| 120 | 73 |
| 131 | 580 |
| 63a | 490 |
| 120 | 73 |
| 136 | 439 |
| 120 | 73 |
| 71a | 550 |
| 120 | 73 |
| 146 | 370 |
| 120 | 73 |
| 169 | 151 |

5. ———: ———: ———. A creditor of the grantor's (in whose favor the defendant had already liquidated a judgment) recovered, subsequent to the sale under the deed of trust, another judgment and purchased the land at the sheriff's sale, and after seventeen years, without having taken steps to redeem under the sheriffs' deed, quitclaimed to plaintiff for a nominal consideration. *Held* that the creditor purchased with full knowledge of the defendants' rights under the contract though it was not recorded when the sheriff's deed was made and that plaintiff having full knowledge of defendants' rights, acquired by the quitclaim deed no greater rights than his grantor obtained.

*Appeal from the St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED.

*M. H. Cahoon* and *E. P. Johnson* for appellants.

(1) The first bill of exceptions herein, making all of the proceedings before the referee on the first hearing before him matters of record, was filed during the term at which the exceptions to the report of the referee were overruled. On the first hearing before the court, the court in its interlocutory decree reserved all questions involved in the suit until after the report of the referee should come in, and until the final hearing; and authorized either party to introduce before the referee any evidence bearing upon the title and right to redeem. The second bill was filed during the term at which the motion for rehearing and new trial were overruled. The court on the final hearing used and considered all the evidence theretofore taken both before it and the referee. *State v. Hurlstone*, 92 Mo. 332: This was a strict compliance with section 3636, Revised Statutes, 1879, before its amendment. See *Jones v. Evans*, 80 Mo. 565; *Bank v. Eldred*, 143 U. S. 298. (2) The petition showed that the Barr note, on

which the action was based, was seventeen years, five months and twenty-five days past due at the time the petition was filed and does not allege any payment on it. This alone constituted such laches as to deprive the plaintiffs of any right of action. *Ferguson v. Soden*, 19 S. W. Rep. 727; *Burgess v. Railroad*, 99 Mo. 508; *Lanitz v. King*, 93 Mo. 519; *Schradski v. Albright*, 93 Mo. 48; *Ward v. Brown*, 87 Mo. 473; *Stamper v. Roberts*, 90 Mo. 683; *Kline v. Vogel*, 90 Mo. 248; *Kelly v. Hurt*, 74 Mo. 567; *Reel v. Ewing*, 71 Mo. 17; *State v. West*, 68 Mo. 229; *Stevenson v. Saline County*, 65 Mo. 425; *Bliss v. Pritchard*, 67 Mo. 181; *Evans v. Snyder*, 64 Mo. 516; *Collins v. Rogers*, 63 Mo. 515; *Landrum v. Bank*, 63 Mo. 48; *Moreman v. Talbot*, 55 Mo. 392; *Smith v. Washington*, 11 Mo. App. 519; affirmed, 88 Mo. 475. (3) The Brault–Siemers agreement, although not signed by Brault, was accepted by her, and was as binding on her as if she had signed it. *Ferry Co. v. Railroad*, 73 Mo. 389; *Heim v. Vogel*, 69 Mo. 529; *Fitzgerald v. Barker*, 70 Mo. 685; *Keith v. Keith*, 80 Mo. 125. It was assigned, and the assignment acknowledged by her before a notary, and this showed that she intended, as provided therein, that the property named in it should be charged with the payment of the claims named in it, with interest as provided, and made it an equitable mortgage without her signature. *Martin v. Nixon*, 92 Mo. 26; *Blackburn v. Tweedie*, 60 Mo. 505; *McQuay v. Peay*, 58 Mo. 56; *McClurg v. Philips*, 49 Mo. 315; *Davis v. Fay*, 2 Mo. 161. It was a document affecting realty, and although not under seal was properly proved, acknowledged and recorded. *Jasper County v. Tavis*, 76 Mo. 17; *McClurg v. Philips*, 57 Mo. 214; *Digman v. McCollum*, 47 Mo. 372. It established appellant's claims recited in it, without other evidence. *Fitzgerald v. Barker*, 85 Mo. 13. (4) Bunch acted for

himself and Brault and conducted this whole matter, even to advertising his property for sale, was present at the trustee's sale, kept silent for thirteen years, and then took the property for sale on commission for the parties holding under said sale. After that great length of time, without complaint, the irregularity, if any, in the advertisement, was both waived and cured by time and the trustee's deed gave a legal title to Siemers. *Tatum v. Holliday*, 59 Mo. 422; *Meier v. Meier*, 105 Mo. 429. Plaintiffs claiming under a quit-claim deed from Brault and Bunch are in no better position than they would be. *Schradski v. Albright*, 93 Mo. 42. In addition, this conduct is an estoppel against them and plaintiffs sufficient to pass title. *Baker v. Humphrey*, 101 U. S. 494; *Blackmore v. Tabor*, 22 Ind. 466. But assuming that the trustee's sale was and is void, a court of equity should not declare a forfeiture of the lien secured by the contract or deeds of trust, especially in the absence of any such provision in the contract. A mortgagee has a right to recover for improvements, which in this case, according to the testimony for appellants, amount to $3,500 permanent improvements for quarry purposes, the only use to which the premises were reasonably adapted, none of which was allowed, but defendants heavily mulcted for having made them. *Martin v. Ratcliff*, 101 Mo. 254; *Turner v. Johnson*, 95 Mo. 431; *Ely v. Turpin*, 75 Mo. 83; *Neilson v. Sass*, 75 Mo. 386; *Rowell v. Jewett*, 73 Maine, 365; *Jones v. Savings Institution*, 67 Mo. 109; *Bollinger v. Chouteau*, 20 Mo. 89; *McSorley v. Larissa*, 100 Mass. 270; *Montgomery v. Chadwick*, 7 Iowa, 114; *Gillis v. Martin*, 2 Dev. Eq. (N. C.) 470; *Morgan v. Walbridge*, 56 Vt. 405; *Givens v. McCalmont*, 4 Watts. 460; *Harper's Appeal*, 64 Pa. St. 315; 95 Ill. 287; *Hadley v. Stewart*, 65 Wis. 481; *Sheperd v. Jones*, 21 Ch. D. 469.

*E. W. Pattison* for respondents.

(1) This court will not consider any exceptions saved at the October term, 1887, nor at the February term, 1888, no bill of exceptions having been filed at either of those terms, and no extension of time having been granted. R. S., sec. 2168. *Jones v. Evans*, 80 Mo. 565. (2) Neither tender nor offer to redeem before filing the bill was necessary. *Kline v. Vogel*, 90 Mo. 239; *Horn v. Bank*, 125 Ind. 381; *Casserly v. Wetherbee*, 119 N. Y. 522; *Sanford v. Flint*, 24 Mich. 26; *Spann v. Sterns*, 18 Tex. 556; *Breaux v. Negrotto*, 43 La. Ann. 426; *Cain v. Gimon*, 36 Ala. 168. The bill contains an express offer to pay any amount which might be found to be due the mortgagee. (3) Respondents were guilty of no laches. Neither the mortgagee nor any one claiming under him, took possession until 1882. In three years thereafter Kennedy commenced proceedings to recover the possession, and has prosecuted them with the utmost diligence to the present time. (4) Both parties claim through Bunch and Mrs. Brault. Respondents, plaintiffs below, have shown that they have the title of Bunch and Mrs. Brault, and hence are entitled to redeem. (5) There has been no waiver of the invalidity of the trustee's sale. Siemers does not claim to have taken possession under his purchase at that sale. No possession was taken by him until 1882, and the court has found that such possession was taken under the mortgage. The entire record shows that this finding was fully warranted. (6) Respondents are the owners of the entire premises in fee simple. But even if it had been shown that they did not hold the entire title to the premises, they would nevertheless be entitled to redeem. See cases cited in note to *Horn v. Bank*, 21 Am. St. Rep. 245. (7) The purchasers from Sie-

mers could not acquire any greater rights than Siemers had.   They could certainly acquire no more than the right to be paid the mortgage debt and the amount of the incumbrances which Siemers had extinguished. *Wells v. Lincoln County*, 80 Mo. 424, and cases there cited.   (8) The mortgagee in possession is liable to account for rents and profits, and for waste committed or suffered.   When he commits the waste, after notice of the rights of the owner of the equity of redemption, he is liable as a trespasser.   (9) The appellants, as mortgagees in possession, are not entitled to an allowance for improvements, even could the holes which they have made in the lot be properly called improvements.   *Horn v. Bank*, 125 Ind. 381; *Moore v. Cable*, 1 Johns. Ch. 385; *Givens v. McCalmont*, 4 Watts. 460. They are not entitled to recover for losses, even if they have sustained any, and can not engage in speculative enterprises.   *Mariott v. Co.*, 3 DeG., F. & J. 187. (10) The mortgagee in possession has no right to open new mines or quarries on the premises.   See cases cited in 15 Am. and Eng. Encyclopedia of Law, p. 592.   Even the cases which concede such right to the mortgagee, hold that if he opens a new mine or quarry he does it at his own risk and peril.   Bainbridge on Mines, 87, 88.   Mac-Swinney on Mines, 84–86.   In *Thorneycroft v. Crocket*, 16 Sim. 445, the mortgagee who had opened a mine on the mortgaged premises, was charged with the receipts but disallowed the expenses.   (11) The damages awarded by the referee were less than the respondents are entitled to, rather than more.   The damages to which we are entitled are at least the value of the rock in the ground, together with the damage to the premises caused by the quarrying, such as the cost of refilling, etc.   *Forsyth v. Wells*, 41 Pa. St. 291; *Iron Co. v. Iron Works*, 102 Mass. 86; *Maye v. Tappan*, 23 Cal. 306; *Waters v. Stevenson*, 13 Nev. 157; *Foote v. Merrill*, 54

N. H. 490; *Hilton v. Woods*, L. R. 4 Eq. Cas. 432; *Wood v. Morewood*, 3 Q. B. 440; *In re Co.*, 15 Eq. Cas. L. R. 46; 15 Am. and Eng. Encyclopedia of Law, p. 601.   (12) The discretion of the court in the matter of costs will not be reviewed by this court.   R. S., secs. 2922, 2923, 2932; *Turner v. Johnson*, 95 Mo. 452.

MACFARLANE, J.—On the twelfth day of December, 1868, Virginia Brault and Harrison K. Bunch being the owners of lot 22 of D. W. Graham's subdivision of the Sulphur Spring tract, situate in the county of St. Louis, now inside the city limits, with two other lots in said city, by their deed of trust, conveyed the same to William D. Butler, as trustee, with power of sale, to secure to John Barr a note for three hundred dollars dated on said day and payable six months after date. This is a suit in equity, commenced in May, 1887, by plaintiffs, who claim to be the owners of the equity of redemption, to redeem said land from said deed of trust, and to compel the *cestui que trust* and his assigns, who were in possession, to account for rents and profits and also for waste committed.

By their answer defendants denied that plaintiffs, or either of them, owned any interest in said land, legal or equitable; admitted that defendant Peter Siemers bought said note, and became the owner and holder thereof, and aver that a sale of the land was made under said deed of trust; admitted that defendant Joseph Frein was in possession of the west half of the lot, and defendants Jacob Frein and Robert Watton were in possesion of the other half; averred that those defendants were not in possession under said deed of trust, but as both the legal and equitable owners in fee simple thereof and charged laches in prosecuting the suit.   They denied the receipt of any rents and profits or the commission of any waste.

On the trial of the issues it was shown that Virginia Brault and Harry K. Bunch were the owners of the land in December, 1868, and made the note and deed of trust as charged. That between that date and June, 1870, they had made, or permitted, other incumbrances on said land, some of which were also deeds of trust. June, 1869, Bunch owned the equity of redemption to one undivided half of the lot, and Brault the other, until disposed of as hereinafter shown.

Prior to June 2, 1870, defendant Siemers entered into an agreement with Brault and Bunch, which was signed by said defendant alone, by which he agreed to advance money, and take up the deeds of trust, and other incumbrances on said land, to sell the property under a deed of trust, buy it in and have the deed made to himself, and hold it for two years for the use and benefit of Mrs. Brault, and, should she, within the time, repay him the money advanced with ten per cent. interest thereon he agreed to convey to her. The evidence also showed that Bunch was active in making the arrangement, and his debts, as well as those of Mrs. Brault, who was his mother, were also to be paid. This agreement was delivered to, and accepted by, Mrs. Brault.

June 2, 1870, the land was sold by the trustee under the Barr deed of trust, and was purchased by said defendant Siemers to whom a deed was made. The deed of trust required twenty days' notice of the sale, while in fact only nineteen days' notice was given. In a dispute over another lot included in the deed the sale and trustee's deed were declared invalid in *Siemers v. Schrader*, 88 Mo. 20.

On November 16, 1870, a judgment was rendered in favor of R. H. Voorhis and against Brault and others for $297.15. Under an execution upon this judgment the interest of the said Brault was sold and a

sheriff's deed made to Voorhis, the purchaser, in April, 1871. The agreement of defendant Siemers recited the payment to the sheriff of another judgment in favor of Voorhis, then $221. On the fifth day of November, 1887, six months after the commencement of this suit, for a consideration of $10, Voorhis conveyed the land, by quitclaim deed, to plaintiffs Kennedy and Crane.

On the fifth of January, 1870, Thomas Morrison obtained a judgment against defendant Bunch for $543:12, under which five acres of lot 22 were sold for $15 and conveyed by sheriff to said Morrison by deed dated February 4, 1870. Under this sale other lots were sold for $275. On the twelfth day of August, 1873, the said Morrison being in failing circumstances conveyed said lot to one Draper as assignee with full power to sell and convey the same to pay debts. No conveyance from Draper appears. On April 16, 1887, Morrison conveyed to defendant Crane, by quitclaim deed, this lot and another one in the city for the express consideration of $1,000. The court refused to permit the real consideration to be inquired into. On April 18, 1887, plaintiff Kennedy conveyed to his coplaintiff Crane the undivided half of said lot 22 and another lot.

The history of the Siemers agreement is as follows: In September, 1870, it was transferred, by written assignment, by Mrs. Brault for the express consideration of $500 to one Nancy Browner. This assignment was witnessed by said Bunch. The agreement and assignment were both duly acknowledged and were recorded October 14, 1882. On the tenth of July, 1881, (as appears from the deed) Browner, for consideration of $100, conveyed the lot back to Mrs. Brault, by quitclaim deed. The deed recited that the property was the same "which Peter Siemers executed his bond and

agreement and which the same is of record in Book 425, page 216." This deed was not recorded until October, 1885. In December, 1883, Bunch and Brault by quitclaim deed conveyed to Theresa Saddler, consideration $60. Saddler made a quitclaim deed dated April 26, 1884, in which no grantee was named. The name of defendant Kennedy was afterwards inserted, the date not appearing. This deed was recorded November 30, 1885.

These are the chains of title under which plaintiffs Kennedy and Crane claim the equity of redemption and the right to redeem. Quite a number of persons are made defendants charged with claiming an interest in the land. Those who showed an interest, claim under the Siemers agreement.

Defendant Siemers purchased at trustee's sale in 1870, and conveyed one-half the premises to defendant E. P. Johnson, May 1, 1882. Those defendants on that date took possession of the property by their tenant. About October, 1885, Siemers and Johnson sold the lot 22 to defendant Joseph Frein for $2,000, of which $500 was paid in cash and balance in notes secured by deeds of trust. The joint deed was a quitclaim, but Johnson afterwards gave Frein a warranty deed. Frein commenced working a quarry on the west half of the land in the fall of 1885. In April, 1886, Joseph Frein in consideration of $1,000 conveyed the east half of the lot to Robert Watton and Jacob Frein who opened a quarry on that half. Upon this evidence the court found that plaintiffs were entitled to redeem.

The issue involving the right to redeem was tried at the October term, 1887, and taken under advisement to the February term, 1888, at which time an order, called in the record an interlocutory judgment, was entered. No bill of exceptions was filed at

either of these terms. The case was at this term sent to a referee with directions to take an account. The report of the referee was filed on July 2, 1889. To this report defendants filed exceptions which were overruled at the December term, 1889, and report of the referee was then confirmed, but the matter was referred back for supplemental account to be taken of waste committed since filing the original report. The first bill of exceptions was filed at this term and included all exceptions taken at the trial or thereafter. The second report was filed at the June term, 1890, and a final decree was then entered. Motion for rehearing, then filed, was continued to the December term. This motion called in question the correctness of the finding and ruling of the court as to the right of plaintiffs to redeem. At the December term, 1890, another bill of exceptions was filed and defendants appealed.

I. The first question for our consideration is whether the bill of exceptions, filed after the lapse of several terms, was in time to bring before this court the evidence upon which the interlocutory decree was rendered, so as to authorize a review of the conclusions of law reached by the trial court upon such evidence. The statute in force at the time, provided that "such exceptions may be written and filed at the time, or during the term of the court at which it is taken, or within such time thereafter as the court may by an order entered of record allow." Acts, 1885, sec. 1, p. 214. There is no pretense that additional time was allowed by the court in this case, so the question must be resolved upon the statute requiring the exception to be written and filed at the time it was taken, or during that term of court.

Difficulty in construing this statute can only arise when doubt exists as to when an exception can be taken. Thus it is the common, recognized practice,

after a motion for a new trial is denied, to save all exceptions to any adverse ruling made during the trial, in one bill, though the motion was not disposed of until a subsequent term of the court. By the motion the court is asked to reconsider its rulings, and an exception to its refusal is sufficient to authorize a review of all questions raised on the trial to which the attention of the court is called by the motion. Ordinarily, however, the exception must be written, allowed and filed during the term or it will be insufficient to preserve for review the point to which the exception is taken. And so this court has held. *Jones v. Evans,* 80 Mo. 566.

There are often a number of steps in the proceedings in a cause which require separate determination and interlocutory orders, and each of which has a bearing upon the final judgment. Those steps may be taken at the same or different terms. It is clearly intended by the statute that when one of these steps is ruled adversely to a party he must take and save his exceptions to that ruling at the term at which it was made or he is bound thereby and cannot have the point reviewed by the appellate court.

Plaintiffs claim this to be a case of that character; that the court first tried the question of the right of plaintiffs to redeem, found such right to exist, and made an interlocutory decree to that effect, and that, no exception being then taken, defendants are concluded by that decree. Plaintiffs are, undoubtedly, correct if the trial of the right to redeem was concluded, and the interlocutory order was intended to be final on that question. The order justifies neither conclusion. It recites in the beginning: "And the trial of this cause having progressed, and it appearing to the court that before final decree can be rendered herein an account must be taken as in this interlocutory

decree hereinafter directed, it is now ordered that the further trial of this cause be continued for the purpose of taking such account." The order then proceeds to appoint a referee and define his duties and adds these two significant sentences: "The court hereby reserves all the questions involved in this suit until after the report of said referee shall come in and until the final hearing of this suit." * * * "Either party shall have the right to introduce, before the referee, any evidence bearing upon the title and the right of the parties hereto to redeem."

It will be observed that in this order there was no finding or declaration of the rights of the parties to redeem, and the question was clearly left open until the final hearing, with the rights reserved to either party to introduce additional testimony. There was no ruling to which defendant could have excepted, until the court determined the rights of the parties and we think the exceptions were taken in time.

II. Objections to the introduction of evidence under the petition were made on the trial upon several grounds, and are earnestly urged here as grounds for the reversal of the judgment, but the view we take of the case upon its merits renders it unnecessary to consider any of them.

III. There can be no doubt, under the evidence in this case, that the sale of the land made in June, 1870, to defendant Siemers by Butler, as trustee under the deed of trust in question, was with the knowledge and acquiescence, if not with the active co-operation and direction, of Brault and Bunch, and in pursuance of the Siemers agreement. That Siemers fully and faithfully performed his part of the engagement stands unquestioned. He paid the incumbrances on the land, and the expenses of a sale according to his undertaking. Two years went by and said Brault and Bunch did not

redeem. It would be most inequitable to permit them now, or their grantees with notice, to repudiate the agreement, made for their benefit, and deny the validity of the sale, consented to at the time, after having received all the benefits of the contract, and the opportunities it afforded.

In the case of *Boogher v. Frazier*, 99 Mo. 325, the beneficiary in a deed of trust, had accepted the money paid upon a defective sale by the trustee, and thereafter undertook to enforce another sale under the same deed. The court held that he was estopped to deny, or question, the validity of the first sale. The ground for estoppel is as persuasive in this case as in that. There, the sale was ratified by the beneficiary; here, it was acquiesced in or directed by the owner of the equity of redemption. In each case, the party complaining received benefits and the purchaser would have sustained losses had the sale been defeated.

Under the rule announced in the recent case of *Schanewerk v. Hoberecht*, 117 Mo. 22, the sale and deed to Siemers, made under the deed of trust, while irregular for want of requisite notice, was sufficient to pass to him the legal title to the land, subject only to such equities as were retained under the agreement. The grantors in the deed of trust and those claiming under them through rights acquired subsequent to the trustee's sale, with notice of the agreement, are clearly estopped to claim a right of redemption after the time limited under the agreement.

IV. We think there is no significance in the fact that the Siemers agreement was not signed by Brault and Bunch, the other parties interested in and to be benefited by it. Its acceptance by them was sufficient to bind them to its covenants and conditions. *Wiggins Ferry Co. v. Railroad*, 73 Mo. 403; *Heim v. Vogel*, 69 Mo. 529. The written assignment of the contract by

Mrs. Brault attested by Bunch and the co-operation of the latter in its execution, are sufficient proof of its acceptance by them.

V. Plaintiffs make their first claim to the equity of redemption through a quitclaim deed from Brault and Bunch to Saddler, dated December 8, 1883, for a consideration of $60, and a quitclaim deed from Saddler to plaintiff Kennedy, dated April 26, 1884, for a consideration of $100. At the time these deeds were taken the Siemers agreement was on record, as also was the deed by the trustee, made in pursuance of its requirements. These facts, taken with the amount of the consideration paid, the character of the deeds taken, and the occupancy of the land by defendants at the time, convince us that plaintiffs were fully advised of defendant's rights when they purchased, and we do not deem it necessary to consider other facts and circumstances in evidence which strengthen our convictions.

VI. Plaintiffs also claim the right to redeem under sheriff's deeds to Voorhis and Morrison dated respectively in 1870 and 1871. It was shown by the evidence that in 1873 Morrison conveyed the lot to an assignee for the benefit of his creditors, and that the day after the assignment he was adjudged bankrupt and he never knew, nor was it shown, what was done with the land. Whatever equities he may have acquired under his deed from the sheriff passed to his assignee under this conveyance, and his subsequent deed to plaintiff vested in them no equitable rights.

The agreement recites, and the evidence shows, that on the fourteenth day of January, 1870, Siemers, at the request of Brault, paid the sheriff of St. Louis county $221, being the amount of a judgment against said Brault in favor of Voorhis. The sale under the deed of trust, and the trustee's deed thereunder to Siemers, were made on June 2, 1870, while the sheriff's

deed to Voorhis was under a judgment in his favor, which was not rendered until November 16, 1870. Under his deed, then, Voorhis only acquired such right of redemption as was retained by Brault and Bunch under the Siemers agreement. Voorhis took no steps to assert his equities or to question the rights of Siemers or his grantees until November 5, 1887, six months after the commencement of this suit, at which time he conveyed his interests to plaintiffs by quitclaim deed, for the consideration of $10.

The facts that under the agreement Voorhis received payment from Siemers of the amount of one judgment against Brault, that the trustee's deed to Siemers was on record when he purchased under his judgment, taken in connection with the delay of seventeen years in asserting his claim, the low estimate he then placed upon it, and the character of the deed taken, convince us also that his purchase was with full knowledge of Siemers' equities under the contract, though it was not recorded when the sheriff's sale was made. Plaintiffs themselves having full knowledge, as has been shown, acquired no rights from their purchase superior to that of Voorhis their grantor.

It follows, that plaintiffs having no equities which entitle them to the relief sought, the judgment should be, and is, reversed. All the judges concur; BARCLAY, J., in the result only.