ADAMS et al. v. CARPENTER et al., Appellants.

Division Two, March 30, 1905.

1. **DEED OF TRUST: Foreclosure: Advertisement for Less Number of Days.** A trustee's deed, made in pursuance to a foreclosure and sale under a deed of trust, passes the legal title, although the land be advertised for sale for a shorter length of time, and in fact sold within a less number of days after the advertisement was begun, than is provided for by the deed of trust. When the trustee conveys the land by deed it passes the legal title, notwithstanding the same may be made in violation of the provisions of the deed of trust.

2. ———: ———: **Irregular: Reinstating Mortgage.** Where the sale by the trustee is at most irregular, not void, it can be taken advantage of only by the mortgagor or those claiming under him, by an action to redeem the land, accompanied by an offer to pay the indebtedness secured by the deed of trust; it furnishes no ground for reinstating the deed of trust.

3. ———: ———: **Fraud: Surrender of Note: Innocent Purchaser: Insufficient Advertisement: Request of Legal Holder.** Where the beneficiary of a deed of trust has been defrauded by the false representations of the mortgagor into rendering to him the note secured by the deed of trust, and thereafter the mortgagor and the purchaser at the foreclosure sale enter into a conspiracy to have the deed of trust foreclosed and the property sold, and that is done, after the maturing of the note, and the title subsequently passes to an innocent purchaser from a vendor in possession, the beneficiary cannot have the sale set

aside and the deed of trust reinstated, for as against such beneficiary the title of a purchaser without notice of the fraud is good. And this is the law, although the sale was made at the request of one who was not the legal holder of the note, and although it was made after an advertisement of twenty days when the deed of trust called for thirty days.

4. ————: ————: **Trustee's Refusal to Act.** Although the trustee named in the deed of trust did not refuse to act, and knew nothing of the sale, a sale before the debt is paid, by the sheriff as acting trustee, does not vitiate a subsequent deed to innocent purchasers from a vendor in possession under the sheriff's deed in foreclosure.

5. **TAX TITLE: Justice's Court.** A judgment for taxes rendered by the court of a justice of the peace is void for want of jurisdiction in the justice to render it, but where there is a sale under such judgment and the sheriff's deed is recorded it may be color of title in one who claims by limitation.

6. **LIMITATIONS: Establishing Title By.** A person claiming land under the Statute of Limitations cannot suffer another who is connected with the record title to go into possession and thereafter sell the land to an innocent purchaser, and then come into court and establish title by limitation as against such purchaser. Such claimant should proceed under section 653, Revised Statutes 1899.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED.

*Tatlow & Mitchell* for appellants.

(1) The law is well settled in this State that the trustee's deed, foreclosing the $700 Myers deed of trust, given to secure $700 to the grandfather of plaintiff, is sufficient to pass the legal title, although the deed of trust required thirty days' notice of the sale and only twenty days' notice was given, for when the trustee conveyed the property by his deed, even though such conveyance was in violation of his trust, it still passed the legal title. Schanewerk v. Hoberecht, 117 Mo. 23; Hume v. Hopkins, 140 Mo. 65; Long v. Long, 141 Mo. 352; Biffle v. Pullam, 125 Mo. 114; Kennedy

v. Siemers, 120 Mo. 73. In the case last cited the deed of trust required twenty days' notice and only nineteen days' notice was given. It was held that the legal title passed by reason of the sale. (2) Not only was the trustee's deed sufficient to convey the legal title, notwithstanding the lack of insufficient notice, but neither the Myerses, nor anyone claiming under them, could question that sale on account of irregularities, for the plain reason that they participated in the same and caused the sale to be made and were to receive from McCaskill $200 if he succeeded in holding the land thereunder. Kennedy v. Siemers, supra; Boogher v. Frazier, 99 Mo. 325. (3) Even if the foreclosure of the deed of trust was invalid for the lack of notice, such invalidity would only be grounds for the mortgagors, or those claiming under them, to redeem the land on the payment of the indebtedness secured by the mortgage. It would be no grounds for reinstating the mortgage in favor of the plaintiff, for the last analysis of this position would be that a person having bought at a foreclosure of a mortgage would, in fact, buy subject to the mortgage. No such doctrine was ever announced by any court. The only way that plaintiff, Adams, could avail herself of any defects in the foreclosure of the deed of trust, would be for her to claim under the Myerses and seek to redeem on account of irregularities in the sale. This she does not do. However many irregularities there might be in the sale under this mortgage, such irregularities are not the equivalent of notice by the appellants of the fraud perpetrated upon her by McCaskill. The petition is predicated upon this theory and the trial court has apparently adopted it without either reason or precedent to sustain it. Biffle v. Pullam, 125 Mo. 114. (4) These alleged defects in the foreclosure sale were cured also by a quitclaim deed from the Myerses, prior to the purchase of the property by the appellants. When the appellants purchased the property the record showed a

perfect record title in the party under whom they pur-
chased, for the quitclaim deeds unquestionably cured
any defects in the foreclosure sale. The trial court,
however, undoubtedly proceeded upon the theory that
the purchaser under the quitclaim deed is a purchaser
with notice, and is not protected by the registry act.
This theory of the trial judge is also in conflict with the
repeated rulings of this court. Hickman v. Green, 123
Mo. 165; Eoff v. Irvine, 108 Mo. 378; Hope v. Blair,
105 Mo. 85; Munson v. Ensor, 94 Mo. 509; Fox v. Hall,
·74 Mo. 315; Boogher v. Neece, 75 Mo. 383; Eversole v.
Rankin, 102 Mo. 488; Elliott v. Buffiington, 149 Mo. 663.
(5) It is true that the plaintiff proved that the trustee
in the deed of trust had not, in fact, refused to act and
knew nothing of the sale, and the sheriff was not au-
thorized to act as trustee until the original trustee had
refused to act, but this did not make his deed as trustee
void as against an innocent purchaser. Smith v. Boyd,
162 Mo. 146; Curtis v. Moore, 162 Mo. 442. (6) The
second count of the petition is inconsistent with the
first, or it shows upon its face that the plaintiff, Adams,
has not sufficient interest in the premises ·to maintain
such an action as this. By this we mean that she,
under this count of the petition, is claiming under the
quitclaim deed which she seeks to set aside in the first
count of her petition, or she is seeking as mortgagee to
quiet the title of the mortgagor. If she is claiming
under the quitclaim deed in this count, then this count
is entirely inconsistent with the first count. If she is
not claiming under the quitclaim deed, then it shows
upon its face that she is merely a mortgagee and would
have no right to bring such an action. (7) If the tax
deed constituted a mere color of title, then ten years'
possession under this color of title under section 653,
Revised Statutes 1899, would have entitled the person
in possession to a decree establishing his record title,
and this is the theory upon which the trial court pro-
ceeded. This, however, is entirely erroneous in this

case for the reason that when the appellants bought of Dibrell, Dibrell was in possession and his possession was consistent with the chain of title from Smith under the Ragland deed, and the registry act protected them from any outstanding title predicated upon ten years' possession, under the statute, supra. One claiming title under this section must do one of two things: He must remain in possession, or he must proceed to have his record title perfected by a decree so as to show that he has a record title. He cannot permit one who is connected with the record title to go into possession and sell the property to an innocent purchaser and then come in and establish title by limitation as against such innocent purchaser. Such a construction would make the registry act—instead of a shield and protection to the purchaser— a delusion and a snare by which to trap him. Where a party is in possession and his possession is consistent with the record title, the purchaser under him, without notice, is protected by the registry act. Hickman v. Green, 123 Mo. 178. It has always been held in this State that the registry act requires actual notice of an unrecorded deed, and even where the person selling the land is not in the actual possession, but the land is in the possession of someone else claiming adversely to him, that such possession, as a matter of law, is not actual notice or knowledge of the adverse title, but that ordinarily it is the equivalent and the jury or court can find such notice from the possession of the party who is making an adverse claim. Vaughan v. Tracey, 22 Mo. 514; Vaughan v. Tracey, 25 Mo. 318; Strain v. Murphy, 49 Mo. 337; Drey v. Doyle, 99 Mo. 459; Freeman v. Moffit, 119 Mo. 300; Hickman v. Green, 123 Mo. 165.

*Chester H. Krum* for respondents.

(1) The petition certainly states ground for the establishment of a lien in behalf of the respondent, and

if it was reprehensible to also seek to have the title settled, the appellants cannot complain, because the title was confirmed in themselves. (2) It is idle to refer to the so-called trustee's sale and the deed given by the sheriff as passing the legal title. There was no trustee's sale. The whole thing was a fraud. (3) The appellants are not such purchasers as the law recognizes. The land involved is worth eight or ten dollars per acre. For this land, worth from twenty-five hundred to thirty-two hundred dollars, the appellant, J. W. Osborn, traded land worth six hundred dollars. (4) While the mere presence of a quitclaim deed in an otherwise perfect chain of title may not of itself be sufficient to put a prospective purchaser on notice, yet many such, or several, may operate to impart notice that there are infirmities. That the deeds were intermediate between McCaskill's fraud and Osborn's trade the record does not show. They may all have been quitclaim. In any event, the first deed from McCaskill to Brown—McCaskill, the purchaser at the sale under the deed of trust—was a quitclaim deed, and that circumstance, fresh upon the sale, was calculated and sufficient to put one upon inquiry. (5) The decree recognizing Ada Adams's lien was rendered in a suit in equity. The chancellor's conclusions, while open to review upon appeal, are nevertheless highly persuasive and will be followed unless widely variant from the facts.

BURGESS, P. J.—The pleadings in this case are as follows:

After alleging that the Mountain Grove Bank is a corporation organized and existing under the laws of this State, the petition proceeds as follows:

"Plaintiffs state, for cause of action, that on the fifth day of August, 1886, Rachel Myers was the owner of the east half of section 27, township 30, range 12, in Texas county, Missouri, and that on said date the said

Rachel Myers, together with her husband, L. E. Myers, executed and delivered their promissory note for seven hundred dollars to James Adams, by which they promised to pay to the said James Adams, in seven months after date thereof, the sum of seven hundred dollars, with ten per cent interest thereon, to be paid annually, and if not so paid, to become as principal and draw the same rate of interest. That on the same day the said Rachel Myers, together with her husband, L. E. Myers, for the purpose of securing said note, executed, acknowledged and delivered, under their hands and seals, their certain deed of trust, whereby they conveyed to G. W. Holliday, plaintiff herein, the said east half of section 27, township 30, range 12, in Texas county, Missouri, said conveyance being in trust to the said G. W. Holliday to secure the payment of the indebtedness above mentioned, and by which deed of trust it was and is provided that in case default should be made in the payment of said debt, or the interest due thereon, at any time when the same ought to be paid, then the said trustee, at the request of the legal holder of said note, was empowered to sell said land at the courthouse door in the county seat of Texas county, first giving thirty days' public notice of the time, terms, and place of sale by advertisement in some newspaper published in Texas county, Missouri, and in case of the death, disability, absence or refusal to act of the said trustee, the then acting sheriff of Texas county was empowered to sell said land, at the request of the legal holder of said note.

"Plaintiffs further state that on the — day of — —, 1892, the said James Adams indorsed, sold and delivered the note above mentioned to Ada Adams, plaintiff herein, and delivered to her the deed of trust above mentioned, by which said Ada Adams became the legal owner and holder of said note and deed of trust.

"Plaintiff further states that from 1892 up to the filing of this petition, plaintiff, Ada Adams, has lived

and resided in the city of Columbus, and State of Ohio; that G. W. Holliday, the trustee named in said deed of trust, has, at all times mentioned herein, resided, and still resides in Golden City, in Barton county, Missouri, and that L. E. Myers has, at all times mentioned herein, been a resident of Texas county, Missouri.

"Plaintiffs further state that in April, 1897, and while the said Rachel Myers and L. E. Myers were residing upon the lands mentioned herein, Rachel Myers died; that thereafter her husband, L. E. Myers, continued to reside upon said lands, and made some small payments on the interest due on the note above mentioned; that about the month of August, 1897, and after the death of said Rachel Myers, said L. E. Myers informed the plaintiff that he was unable to pay said note, which, together with the interest, then amounted to one thousand dollars, and proposed that upon the surrender by her of the said note and deed of trust securing the same, he would convey and cause to be conveyed to the said Ada Adams a deed conveying to her the absolute title to all of said lands in satisfaction of said note and indebtedness; that relying upon said representations, the plaintiff herein, Ada Adams, believing that she was receiving in return therefor a good and sufficient title to said lands, sent said note and deed of trust securing the same to the said L. E. Myers, but that the said L. E. Myers, instead of conveying said lands, or causing same to be conveyed to plaintiff herein, Ada Adams, so as to give her a good title to said lands, only executed a quitclaim deed, by which he conveyed the interest of himself, Lewis E. Myers, to the said Ada Adams, and which only conveyed to the said Ada Adams the curtesy of the said Lewis E. Myers in said lands as the husband of said Rachel Myers, deceased; that plaintiff herein, Ada Adams, relying upon the representations of the said L. E. Myers, as aforesaid, that said lands would be conveyed to her in fee simple in exchange for said note and deed of trust, and

believing that the deed so received by her did so convey said lands, and being unacquainted, or uninformed, as to the facts in the matter, and having no knowledge at that time of the fraud and deceit practiced upon her, as aforesaid, caused said deed to be filed for record in Texas county, Missouri, and the same was recorded on the 29th day of September, 1898, in book 38, at page 227, deed records of Texas county.

"Plaintiffs further state that the said Rachel Myers, in whose name the title to said lands stood, left surviving her at her death three sons, to-wit, A. L. Myers, J. C. Myers and W. A. Myers, and one daughter, L. J. Carpenter; that at the time of the transaction and exchange between L. E. Myers and plaintiff, Ada Adams, the said heirs of Rachel Myers, deceased, had full knowledge of the facts, and understood and believed that said lands was being given in exchange for the said note and deed of trust, and after the execution and delivery of said deed by said L. E. Myers to the said Ada Adams, the said children and heirs of the said Rachel Myers, deceased, recognized said plaintiff as the absolute owner of said lands, and that said J. C. Myers made a contract of rental with said plaintiff and occupied the said lands as the tenant of the plaintiff, Ada Adams, paid the taxes thereon for plaintiff and paid the rents from said premises to plaintiff, Ada Adams, and that all of said children and heirs knew and understood that said land was the land and property of the plaintiff herein, Ada Adams.

"Plaintiffs further state that the deed of trust above mentioned was recorded on the 17th day of August, 1886, in book 4, at page 144, deed records of Texas county, Missouri; that after said L. E. Myers had obtained possession of said note and deed of trust, and had kept possession of the same for about three years, and until about February in the year 1900, being in the employ of one J. C. McCaskill, and informed the said J. C. McCaskill of the condition of affairs, and of

his possession of said note and deed of trust, and that the same was not satisfied of record, the said L. E. Myers, A. L. Myers, J. C. Myers, and J. C. McCaskill entered into a conspiracy to cheat and defraud the plaintiff here, Ada Adams, out of said lands and out of said note and deed of trust, and that in pursuance of said arrangement and conspiracy, and with full knowledge on the part of each of the last-mentioned parties of all the facts herein, the said note and deed of trust was delivered to J. C. McCaskill, who informed the sheriff of Texas county that he was the legal holder thereof, and that the same was due and unpaid, and that the trustee named in said deed of trust had refused to act, and caused the sheriff to make a pretended foreclosure of said deed of trust for the payment of said note, and that the said lands were sold by J. W. Cantrell, the then acting sheriff of Texas county, on the third day of March, 1900, and were bid in by the said J. C. McCaskill for the pretended consideration of thirteen hundred dollars, and that J. W. Cantrell, pretending to act as trustee in said deed of trust, executed and delivered a deed to the said J. C. McCaskill, purporting to convey said lands, which deed appears of record in Texas county, Missouri, in book 43, at page 518, and was filed for record, on the third day of March, 1900.

"Plaintiffs further state that in furtherance of said scheme and combination, the said J. C. McCaskill afterwards, on March 19, 1900, executed and delivered a deed of trust on said lands to J. D. Young, trustee for the Mountain Grove Bank, which deed was recorded on March 29, 1900, in book 14, at page 441, deed records of Texas county, and on March 12, 1900, executed and delivered a deed of trust to J. D. Young, trustee for the Mountain Grove Bank, said deed of trust purporting to secure the payment of two thousand seven hundred and ninety-five dollars.

"Plaintiffs further state that in furtherance of

said fraud, and on the 25th day of January, 1900, the said J. C. McCaskill caused a deed to be made to himself from A. L. Myers and wife, J. C. Myers and wife, and W. A. Myers and wife, purporting to remise, release and quitclaim their interest in said lands to the said J. C. McCaskill. Plaintiffs further state that no consideration passed from the said J. C. McCaskill to said A. L. Myers, J. C. Myers and W. A. Myers, for said last-mentioned deeds, but that they informed the said McCaskill, at and prior to the execution of said deed, that they claimed no interest in said lands.

"Plaintiffs further aver' that no consideration whatever was passed or was paid by the said J. C. McCaskill to L. E. Myers for the note and deed of trust above mentioned, and that the said L. E. Myers informed the said J. C. McCaskill as to all facts hereinbefore set out and recited, and that he had no title to said note and deed of trust, and that the said J. C. McCaskill took the same for the purpose of defrauding and cheating plaintiff herein, Ada Adams.

"Plaintiffs further aver that the said G. W. Holliday, the trustee named in said deed of trust, did not at any time refuse to act as such trustee; that his place of residence is recited in said deed of trust, and appears of record, and that the place of residence of said trustee was known to L. E. Myers and to the said J. C. McCaskill; that said deed of trust requires that the sale shall be advertised for thirty days, and that in truth and in fact the same was advertised only twenty days; that the legal holder of said note did not request the sheriff of Texas county to foreclose said deed of trust; that the recital in the said pretended deed of the sheriff that he had the written refusal of the trustee to act as such is false and untrue; that the trustee therein named had no knowledge of the sale until a long time thereafter; that no consideration whatever was paid at said trustee's sale; that the said sheriff never saw the said note described in said deed of trust

and that nothing whatever was paid said sheriff, except his fees for making said deed; that no credit was indorsed on said note and that no person had said note at said sale.

"Plaintiffs further state that the amount now due on said note is thirteen hundred dollars; that plaintiff is unable to file the said note and deed of trust securing the same, for the reason that the same is in the possession of and under the control of the defendants herein, and that the plaintiff, Ada Adams, has requested the possession thereof and has been refused the same.

"Wherefore plaintiffs pray that a decree may be entered in this court setting aside, cancelling and holding for naught the said quitclaim deed from A. L. Myers, and J. C. Myers and W. A. Myers to J. C. McCaskill, dated January 21, 1900, and recorded in book 38, at page 435, and setting aside and cancelling and holding for naught the said deed of J. W. Cantrell, purporting to foreclose said deed of trust, which said sheriff's deed is dated March 3, 1900, and recorded in book 43, at page 518, deed of records of Texas county, and decreeing and adjudging plaintiff, Ada Adams, to be the owner and holder of the said seven hundred dollar note and for judgment thereon for the amount of thirteen hundred dollars, and that a decree be entered declaring said deed of trust dated August 5, 1886, and recorded in book 4, at page 144, to be of full force and effect, and for an order and decree that the same be foreclosed for the payment of said indebtedness.

"Plaintiffs for another and further cause of action state that on June 26, 1860, the east half of section 27, township 30, range 12, was entered from the United States government by cash entry No. 21169 by one Patrick Smith, and that afterwards, to-wit, on the 25th day of November, 1881, said land was sold for taxes by the sheriff of Texas county, under a judgment for back taxes, which had been declared a lien against said land, as the property of Patrick Smith, and that the

Ozark Land Company, a corporation, was the purchaser at said sale and received a deed therefor in the usual form and containing the usual recitals, which deed purported to convey to the said Ozark Land Company all the right, title and interest of Patrick Smith in and to said lands, and was recorded on the 24th day of May, 1882, in book O, at page 331, deed records of Texas county; that the judgment under which said land was sold was rendered before R. D. Gobble, a justice of the peace of Piney township in and for Texas county, Missouri, and that said judgment was rendered for taxes for the years 1867, 1869, 1870, 1872, 1873, 1875, 1877 and 1879.

"That thereafter, to-wit, on the 18th day of December, 1883, the Ozark Land Company sold and conveyed said lands by general warranty deed to one Frank Henderson, which deed was recorded in the deed records of Texas county on the 3d day of January, 1884, and is recorded in book P, at page 111; that said Frank Henderson went into possession of said lands in 1883, under claim and color of title, and claiming to be the absolute owner thereof, and made valuable and lasting improvements thereon and remained in the open, exclusive, adverse and notorious possession of all of said lands, under claim and color of title thereto, until the 18th day of January, 1886, when he sold the said lands and conveyed the same by general warranty deed to Rachel Myers, who was then and there the wife of L. E. Myers; that said deed was recorded on the 28th day of June, 1886, in book T, at page 552, deed records of Texas county, and that said Rachel Myers and L. E. Myers, under said deed, immediately took possession of said lands and continued to reside thereon and cultivate the same and to make improvements thereon, and at all times claiming to own an absolute fee simple title to said lands under claim and color of title, and

was in the open, exclusive, notorious and adverse possession of said lands up to and including 1898.

"Plaintiffs further state that on the 5th day of August, 1886, the said Rachel Myers, together with L. E. Myers, her husband, executed a certain deed of trust by which they conveyed said lands to G. W. Holliday, as trustee for James Adams, to secure the payment to said James Adams of a note of that date for seven hundred dollars, due and payable seven months after date, with ten per cent compound interest thereon. Plaintiffs further state that in 1897 plaintiff, Ada Adams, took possession of said lands, claiming under title from the said Rachel and L. E. Myers.

"Plaintiffs state that the said note and deed of trust is still due and unpaid, and that said deed of trust is a first lien on said lands to secure thirteen hundred dollars to plaintiff, Ada Adams, who is now the assignee and legal owner and holder of said note.

"Plaintiffs further state that in 1867 the said Patrick Smith, the original purchaser of said lands from the United States government, died but that thereafter, to-wit, on the 30th day of May, 1888, and while the said Rachel Myers and L. E. Myers were in possession of said lands, one W. A. Ragland discovered that said Myers held said land under a tax title, and forged and caused to be forged, a deed to said land, purporting to convey said lands to W. A. Ragland, and purporting to be acknowledged before one C. F. Howell, a notary public in Apanuse county, State of Iowa; that said false, forged and counterfeited deed was recorded in Texas county, Missouri, on March 27, 1889, in book W, at page 185. That thereafter, on May 18, 1892, said William A. Ragland and wife made a deed to said land by which they purported to convey the same to one Lottie A. Mitchell, which deed is recorded in book 29, at page 631, deed records of Texas county. That afterwards, to-wit, on February 12, 1895, said Lottie A. Mitchell and S. E. Mitchell, her husband, made a deed

by which they purported to convey the said lands to
one B. F. Henderson, which deed was recorded October
2, 1895, in book 36, at page 131, deed records of Texas
county. That afterwards, to-wit, on April 14, 1896,
the said B. F. Henderson and wife made a deed which
purported to convey said lands to one A. C. Chapman,
which deed was recorded May 27, 1897, in book 40, page
91, deed records of Texas county. That afterwards, to-
wit, on the 6th day of October, 1897, the said A. C.
Chapman executed a deed to said land to one M. T.
Williams, which was recorded October 25, 1897, in book
41, at page 6, deed records of Texas county. That
afterwards, to-wit, on November 24, 1897, M. T. Wil-
liams made a deed to said lands to the . Jones Dry
Goods Company, a corporation, which deed was record-
ed August 28, 1899, in book 38, at page 354, deed records
of Texas county. That afterwards, to-wit, on August
21, 1899, the Jones Dry Goods Company made a deed
to said lands to W. O. Craig, which deed was recorded
September 11, 1899, in book 43, at page 246, deed
records of Texas county. That afterwards, to-wit, on
February 23, 1900, the said W. O. Craig, and wife made
a deed to said land to one Julia Brown, which deed was
recorded April 30, 1900, in book 44, page 224, deed
records of Texas county, Missouri. That afterwards,
on April 7, 1900, the said Julia Brown, and husband
executed a deed of trust on said land to J. D. Young,
trustee for the Mountain Grove Bank, purporting to
secure the payment to said Mountain Grove Bank of
a note of four hundred and fifty dollars, which deed
was recorded May 21, 1900, in book 44, at page 447,
deed records of Texas county. That afterwards, to-wit,
on May 15, 1900, the said Julia A. Brown and husband
deeded said land to one H. N. Dibrell, which deed was
recorded on May 21, 1900, in book 44, at page 300, deed
records of Texas county. That afterwards, to-wit, on
the 16th day of July, 1900, the said H. N. Dibrell deeded
said lands to John W. Osborn and Lavinia Osborn .

which deed is recorded in the deed records of Texas county on July 19, 1900. That afterwards, to-wit, on July 16, 1900, the said John W. Osborn and wife executed a deed of trust on said land to J. A. Chase, trustee for H. N. Dibrell, to secure the payment of two hundred and fifteen dollars, which deed was recorded in Texas county, Missouri, on July 25, 1900.

"Plaintiffs further state that the said John W. Osborn and Lavinia Osborn and the said H. N. Dibrell are now claiming some interest in said lands adverse to plaintiffs herein and adverse to title under which plaintiffs claim.

"Plaintiffs further state that W. A. Myers, L. J. Carpenter, H. N. Dibrell, John W. Osborn and Lavinia Osborn are non-residents of the State of Missouri, and cannot be served with the usual process of law in this State.

"Wherefore, plaintiffs pray that a decree be made by this court decreeing and adjudging the said forged deed above mentioned from Patrick Smith to W. A. Ragland null and void, and cancelling and setting aside the same and cancelling and setting aside the deeds from W. A. Ragland and all his subsequent grantees and the deeds of all parties holding under and through said forged deeds, and adjudging the title in said lands in L. E. Myers, husband, and A. L. Myers, J. C. Myers, W. A. Myers and L. J. Carpenter, the children and heirs of Rachel Myers, deceased, subject to the lien of the deed of trust held by plaintiff, Ada Adams, herein, and for such relief in the premises as to the court may seem just and proper."

Of all the defendants only the Osborns answered. Their answer is as follows:

"Now come defendants, John W. Osborn and Lavinia Osborn, and for their answer herein admit that they claim title to the land in plaintiff's petition described; that their claim is adverse to plaintiff herein, and adverse to the title under which plaintiff claims.

They admit that said land was entered in 1867 by one Patrick Smith from the United States government; that thereafter, on May 30, 1888, the said Patrick Smith conveyed said land to W. A. Ragland by a good and sufficient deed, but deny that W. A. Ragland, or anyone else, forged or caused to be forged said deed. They admit that on May 18, 1892, said W. A. Ragland and wife conveyed said land by deed to Lottie A. Mitchell; that afterwards, on February 12, 1895, said Lottie A. Mitchell and S. E. Mitchell, her husband, made a deed conveying said land to B. F. Henderson; that afterwards, on April 14, 1896, the said B. F. Henderson and wife conveyed said land to A. C. Chapman; that afterwards, on October 6, 1897, the said A. C. Chapman conveyed said land to one M. T. Williams; that afterwards, on October 24, 1897, said M. T. Williams conveyed said lands to the Jones Dry Goods Company, a corporation; that afterwards, on August 21, 1899, the Jones Dry Goods Company conveyed said lands to W. O. Craig; that aferwards, on February 23, 1900, the said W. O. Craig and wife conveyed said land to Julia A. Brown; that aferwards, on May 15, 1900, the said Julia A. Brown and her husband deeded said land to H. N. Dibrell, one of the defendants named in the petition; that afterwards, on July 16, 1900, the said H. N. Dibrell conveyed said lands for a valuable consideration to the defendants, John W. Osborn and Lavinia Osborn. Defendants aver that all of said conveyances from Patrick Smith to these defendants were each made upon a good, sufficient and valuable consideration; that they were each duly executed, acknowledged and delivered.

"Further answering, defendants aver that the deed described in plaintiff's petition as having been forged to W. A. Ragland was made by Patrick Smith, the purchaser of said land from the Government, and that said deed was in all respects duly executed, acknowledged and delivered by him on the date thereof,

May 30, 1888, and was sufficient to convey and did convey the title to said land to the grantee therein, W. A. Ragland.

"Defendants further answering, aver that the foreclosure of the deed of trust described in plaintiff's petition from Rachel E. Myers and husband to G. W. Holliday, trustee for James Adams, by J. W. Cantrell, the then acting sheriff of Texas county, Missouri, was regular and in accordance to the powers and provisions therein delegated to him and was sufficient to convey, and did convey, to the purchaser, John C. McCaskill, all the right, title and interest of the said Rachel Myers and L. E. Myers in and to said lands; that by mesne conveyances from the said John C. McCaskill, all the right, title and interest of the said Rachel and L. E. Myers (in said land) is now vested in the defendants; that these defendants were purchasers of said interests in said real estate for full value and without the knowledge of fraud on the part of other defendants herein, or anyone else, and were put in possession of said real estate under their deed.

"Further answering defendants aver that the said note and deed of trust is now barred by the Statutes of Limitation of this State, and can not now be set up as a lien on said real estate; that the deed from plaintiff, Ada Adams, to L. E. Myers (dated September 4, 1897), was a satisfaction of the note and deed of trust, and that by her said deed she is now estopped from setting up said deed of trust as a lien on said land; that if plaintiff ever had a right to have her deed of trust restored against said land, by her laches and negligence in prosecuting her suit and giving notice of her claims, she has now forfeited such right and cannot now be heard to complain as against these defendants, who are innocent purchasers for value.

"Further answering, defendants aver that it is recited in said deed of trust that the trustee's deed made thereunder shall be prima facie evidence of the truth

of the recitals therein; that upon these recitals, to-wit, that the legal holder of the note had requested the trustee to foreclose, that the trustee had refused to act, and that he had proceeded to and did foreclose the same under the powers given in said deed of trust, these defendants relied and had a right to rely in making their purchase.

"Defendant's further aver that they took possession of said lands under their deed and put one Salsberry in actual possession thereof as their tenant; that the plaintiff, Adams, subsequently induced said tenant to attorn to her before the expiration of the lease between defendants and Salsberry.

"Every other allegation in plaintiff's petition alleged not herein admitted defendants deny.

"Wherefore they pray the court that plaintiff's petition be denied and that she be required to deliver and assign existing and prior leases and rents to the defendants, and pray for all other reliefs to which they are entitled."

After having dismissed the suit as to the Mountain Grove Bank, the court rendered the following judgment and decree:

"And afterwards, at the May term, 1901, the said circuit court rendered a judgment in said cause, a duly certified copy of which has been filed in this court, the substance of which judgment and decree is as follows, to-wit:

"Whereupon the court, sitting as a jury, having heard all the evidence and the argument of counsel, and it appearing to the satisfaction of the court that the defendants, L. J. Carpenter and W. A. Myers, have been served with process by publication for four weeks successively by publication in the Texas County Star, a weekly newspaper printed and published in Texas county, Missouri, said publication at least once each week and the last insertion of which was more than thirty days before the first day of this term of this

court, and it further appearing that J. C. Myers, L. E. Myers, A. L. Myers and John C. McCaskill have been served by process of summons herein more than thirty days before the first day of the present term of this court, and the evidence herein being heard and in all things considered by this court, the court doth, after mature deliberation, and after argument of counsel, order, adjudge and decree that the title to the lands described in plaintiff's petition, to-wit, the east half of section 27, township 30, range 12, in Texas county, Missouri, be vested in John W. Osborn and Lavinia Osborn, defendants herein, subject to the life estate of L. E. Myers, defendant herein, and subject to a first lien for the sum of fourteen hundred and seventy-two dollars in favor of plaintiff, Ada Adams.

"It is further ordered, adjudged and decreed by the court, that the assignment of the note described in the deed of trust by Rachel Myers and L. E. Myers, her husband, due the 5th day of August, 1886, which assignment was made by Ada Adams to L. E. Myers, be set aside and for naught held and esteemed; that the assignment of said note from the said L. E. Myers to John C. McCaskill be set aside and for naught held and esteemed, and the title to said note be and is hereby vested in plaintiff, Ada Adams.

"It is further ordered, adjudged and decreed that the deed to the lands herein described from L. E. Myers to Ada Adams, conveying the lands herein described, and dated the 4th day of September, 1898, and recorded in book 38, at page 227, deed records of Texas county, Missouri, be set aside, cancelled and for naught held and esteemed.

"It is further ordered, adjudged and decreed by the court that the foreclosure of the deed of trust given by Rachel Myers and L. E. Myers, her husband, and recorded in book 4, at page 144, deed records of Texas county, be set aside, cancelled and for naught held and esteemed; that the deed made in pursuance of the said

pretended foreclosure, purporting to convey the right, title and interest of Rachel Myers and L. E. Myers in and to said land described herein to John C. McCaskill, and which deed is recorded in book 43, at page 518, deed records of Texas county, be cancelled, set aside and for naught held and esteemed.

"It is further ordered, adjudged and decreed by the court that the deed of trust given by Rachel Myers and L. E. Myers, her husband, dated the 5th day of August, 1886, to G. W. Holliday, trustee for James Adams, conveying the east half of section 27, township 30, range 12, in Texas county, Missouri, and recorded in book 4, at page 144, deed records of Texas county, Missouri, be revived and in all things reinstated, and the same is hereby revived. And it is decreed and adjudged a first lien upon said lands to secure the sum of fourteen hundred and seventy-two dollars, being the amount now due on said note in favor of plaintiff, Ada Adams.

"It further appearing that the plaintiff herein, Ada Adams, is the legal owner and holder of said note and entitled to receive the amount due thereon, it is further ordered, adjudged and decreed that plaintiff have judgment of foreclosure on said note and deed of trust for the sum of fourteen hundred and seventy-two dollars, the amount of principal and interest of said note now due. And it is further ordered, adjudged and decreed that said amount is a first lien against the lands described in the said deed of trust and that said deed of trust be foreclosed, and that said premises be sold to satisfy the lien of said deed of trust, and that the proceeds be applied to the payment of said debt and interest due thereon, and $53 taxes paid by plaintiff to protect said deed of trust and lien and the costs in this suit laid out and expended.

"It is further ordered, adjudged and decreed that all the right, title and interest of W. A. Ragland, Lottie E. Mitchell, B. F. Henderson, A. C. Chapman, M. T.

Williams, Jones Dry Goods Company, W. O. Craig and all persons holding by, through or under said Patrick Smith are barred of any right, title or interest in said lands described herein by reason of adverse possession, and that the absolute title to said lands is vested as hereinbefore set out; that is to say, that the deed of trust recorded in book 4, at page 144, is a first lien upon said lands to secure the payment of the sum of fourteen hundred and seventy-two dollars to Ada Adams, that the equity of redemption to said lands is vested as follows: The life estate in L. E. Myers, with the remainder in fee in John W. Osborn and Lavinia Osborn.''

In due time defendants Osborn filed their motion for a new trial, which being overruled they appealed. As they alone appealed they are the only parties defendant before this court, so that it will only be proper to review the evidence and decree of court in so far as their interests and the plaintiff's may be concerned.

It is well settled that a trustee's deed foreclosing a deed of trust upon land given to secure the payment of a note, will pass the legal title, though the land be advertised for sale, and in fact sold, in a shorter space of time, or less number of days, than provided by the deed of trust, for when the trustee conveys the land by deed it passes the legal title notwithstanding the sale may be in violation of the provisions of the deed of trust. [Schanewerk v. Hoberecht, 117 Mo. 22; Hume v. Hopkins, 140 Mo. 65; Long v. Long, 141 Mo. 352; Biffle v. Pullam, 125 Mo. 108; Kennedy v. Siemers, 120 Mo. 73.]

So that the deed from the acting trustee, Holliday, under the deed of trust from Rachel E. Myers and her husband L. E. Myers, passed the legal title to the land to the grantee in the deed to the purchaser, John C. McCaskill, notwithstanding the deed of trust under which it was sold required thirty days notice of the sale, while only twenty days notice was in fact given.

The sale by the acting trustee was at most only irregular, not void, and could only be taken advantage of by the mortgagors, or those claiming under them, by an action to redeem the land, accompanied by an offer to pay the indebtedness secured by the mortgage. But we are clearly of the opinion that it would furnish no ground for reinstating the mortgage. If plaintiff claimed under the Myerses, she could redeem from the sale under the mortgage, but this she does not do. It was ruled by this court in Biffle v. Pullam, 125 Mo. 108, in an action of ejectment by the purchaser of land at a sheriff's sale under a deed of trust, and the answer of the defendant grantor in the deed of trust in the nature of a general denial without an offer to redeem, that it was no defense that the sale was made at the request of such purchaser, who was not the legal holder of the note, as required by the terms of the deed of trust. But the defendant, as a defense, could have offered to redeem, and, upon performance, his possession would have been protected and his title reinstated, but as he failed to do so, the only issue was the validity of the legal title which passed to the plaintiff by the sheriff's deed.

It is evident from the facts disclosed by the record that the plaintiff, Adams, believed at the time she assigned the $700 note to said L. C. Myers, that it was in exchange for the land, and that she was getting an absolute title to it, but instead he only executed to her a quitclaim deed, by which he conveyed the interest of himself, which was his curtesy as the husband of said Rachel Myers, deceased.

But conceding that plaintiff was laboring under the impression at the time she assigned the note to Myers and delivered to him the deed of trust by which its payment was secured, that she was getting a fee simple title to the property, and that McCaskill upon learning the true condition of affairs took advantage of them, and committed a fraud upon her, and that upon suit by

her against him, McCaskill, and the Myerses, the fore-closure would have been set aside and the deed of trust reinstated as a lien upon the property in her favor; or, that she would have been entitled to have vested in her the title of both McCaskill and Brown, the latter of whom purchased with knowledge of the transaction, yet as defendants were purchasers of the land for a valuable consideration and in good faith, their vendor being in possession and having a clear record title, their title was good as against the plaintiff. It was plaintiff's misfortune that she was deceived and defrauded by Myers, and McCaskill, but as defendants were in no way connected with it, or had notice of it at the time of their purchase, they are not affected thereby.

While it was proven that the trustee named in the deed of trust did not in fact refuse to act, and knew nothing of the sale of the property by the sheriff as acting trustee, this did not vitiate the deed to defendants, they being innocent purchasers in good faith. It would have been different, however, if the note had been paid before the trustee's sale, for in that event the sale would have been void.

In Curtis v. Moore, 162 Mo. l. c. 448, MARSHALL, J., speaking for the court, said: "If a debt secured by a deed of trust was fully paid before the foreclosure, the trustee's deed conveyed no title, for the power to sell was extinguished as between the mortgagor and mort-gagee. But as to the purchaser at the trustee's sale, in good faith and without notice, the deed passed a good title."

The purpose of the second count seems to be to re-move a cloud from the title occasioned by the forgery of a deed thereto in 1888 by one W. A. Ragland, but there was no evidence tending to sustain the forgery, and this branch of the case seems to have been ignored by the court in its judgment. The land was sold for taxes as the property of one Patrick Smith, the pa-tentee, by the sheriff of Texas county, on the 25th day

of October, 1881, under a judgment rendered by a justice of the peace, and a deed was thereafter executed by him to the purchaser, the Ozark Land Company, for the land, but this deed was absolutely void for want of jurisdiction in the justice to render the judgment under which the land was sold. [McVey v. Carr, 159 Mo. 648.]

Plaintiff concedes in her petition that said tax deed was color of title, and this being conceded, the court in effect ruled that ten years' possession under this color of title, under section 653, Revised Statutes, 1899, would have entitled the person in possession to a decree establishing his record title, but defendants insist that this was erroneous for the reason that when appellants bought from Dibrell he was in possession, and their possession under Dibrell was consistent with the chain of title from Smith under the Ragland deed, and the registry act protected them from any outstanding title predicated upon ten years' possession under the statute, supra.

We think it clear that a person claiming land by the Statute of Limitations cannot suffer another who is connected with the record title to go into possession and thereafter sell the property to an innocent purchaser, and then come in and establish title by limitation as against such purchaser, but that plaintiff should have proceeded under section 653, Revised Statutes 1899, to have her title to the land established.

Defendants' possession was consistent with their paper title derived from Smith, the patentee, and, having purchased it for value, and in good faith, they come within the protection of the provisions of the recording act, and hold the title as against the plaintiff. [Hickmann v. Green, 123 Mo. 165; Ebersole v. Rankin, 102 Mo. 488.]

Our conclusion is that the judgment should be reversed and the petition dismissed.

All concur.