WALCOP & GRISWOLD vs. McKINNEY'S HEIRS.

A mortgagee may maintain an action of ejectment against the mortgagor, or those claiming under him.

### APPEAL from Warren Circuit Court.

CAMPBELL *for Appellants.*

BIRD, *for Appellees.*

McBRIDE, J., *delivered the opinion of the Court.*

Alexander McKinney's widow and heirs instituted an action of ejectment in the Circuit Court of Warren county, to recover possession of a tract of land situated in said county, and described as a "certain tract or parcel of land, situate on Lake creek, containing thirty-eight acres, more or less, in Charette township, in Warren county, and the same tract conveyed by Andrew Cockran to William F. Bentinck, and the same conveyed by said Bentinck to Alexander McKinney, as will more particularly appear by reference to the record of conveyances from said Cockran to Bentinck, and from said Bentinck to said McKinney, found in the office of the recorder of the said county of Warren." The defendant, Walcop, being the tenant in possession, and not claiming title, the defendant, Griswold, was on motion permitted to be made co-defendant and they thereupon filed their plea of not guilty, on which issue having been taken, the parties went to trial, when the jury found the defendants not guilty, whereupon the plaintiffs filed their motion for a new trial, which was sustained by the Court, and a new trial granted.

On the second trial the jury found "the defendants guilty of withholding from the plaintiffs the possession of the premises, as is alleged in said

plaintiff's declaration," on which the Court entered judgment; thereupon the plaintiffs filed their motion in arrest of judgment, and for a new trial, which being overruled they excepted, and have brought the case here by appeal.

The bill of exceptions sets out the proceedings had on the trial in the Circuit Court, with the evidence given on the trial, and that offered by the defendants, and excluded by the Court, from all of which it appears that the parties each claim title under Wm. F. Bentinck; who had purchased the land in controversy from one Andrew Cockran. Bentinck, on the 24th January, 1838, mortgaged the premises to Alexander McKinney. On the 23d October, 1838, Griswold obtained a judgment in the Warren Circuit Court against Bentinck; on the 25th January, 1840, he obtained four other judgments before a justice of the peace, and filed transcripts of the same in the clerk's office of the Warren Circuit Court. On the 31st July, 1840, Bentinck conveyed by deed to McKinney, who at the same time executed a defeasance bond, binding himself to reconvey, provided Bentinck should, within two years, pay him the amount of his debt with the accruing interest. On the 24th Nov., 1840, the sheriff, by virtue of Griswold's executions, sold the land in controversy, and Griswold became the purchaser, and obtained a deed from the sheriff.

The counsel for the appellants assume that the deed under which the appellees claim to have title, although absolute on its face, was intended by the parties as a mortgage, and being so intended it will be taken and treated as such by the Court. Having thus determined the character of the deed, it is then argued that a mortgage, under our statute, is a simple security for a debt, and does not, as in England, pass such a title as will enable the mortgagee to maintain an action of ejectment.

There is no question but that our statute has greatly changed the character of mortgages, and the rights of parties under them, but still the authority referred to does not sustain the doctrine contended for by the counsel. In the case referred to, in 1 J. J. Marsh 257, are stated some of the principles which characterize mortgages in this country at the present time; as that a payment of the mortgage debt extinguishes the mortgage at law as well as in equity. The mortgage is but a chattel interest. The right to the money passes to the personal representative of the mortgagee, and his receipt of the debt is good against the heir. The wife of the mortgagor is dowable, and of the mortgagee is not, even after forfeiture. The estate mortgaged may be sold to pay the mortgagor's debts, but not for the debt of the morgagee. The debt cannot be separated from the mortgage. The mortgagee, after forfeiture, may maintain

an ejectment against the mortgagor, to recover the estate mortgaged, *that he may have the benefit of the profits.* But the legal title *pro forma* is vested in the mortgagee, after forfeiture, *for the sole purpose of securing his debt.* He cannot sell or assign the estate without parting with the debt; and it seems to result necessarily, that by an extinguishment of the debt, *ipso facto*, the perfect legal title relapses to the mortgagor; it is not doubted that a payment, before forfeiture, extinguishes the mort-gage at law. But there are many learned judges who doubt whether a payment, after forfeiture, will have the same effect. On this point there is great diversity in the cases reported, as well as in the *"auctoritas prudentium."* But ever since the days of Hardwick, the opinion has grown more and more prevalent, that a payment at any time before the title has passed to the mortgagee, by a decree or sale, will, *per se*, at law, as it will in equity, divest the mortgagee of all title. To support the foregoing propositions, the Courts in Kentucky refer to 4 John. R. 42-3; 2 Burr 969; Douglass 630; ib. 455; 6 John. R. 294; 7 ib. 278; 10 ib. 381; 7 Mass. R. 139; 5 John. Ch. R. 454, 552, 570; Fuller 185-6; Powell on Mort. 683.

The books all hold the doctrine that after the day of payment as stip-ulated in the mortgage deed, the legal title is in the mortgagee, and he can only be divested of that title in one of two ways—either by payment of the debt, when the title will revert to the mortgagor; or by a sale of the mortgaged premises, when the title passes to and vests in the pur-chaser.

But it is not deemed necessary to prosecute the investigation of this point further, at this time, and to show, if it were practicable to do so, the necessity of holding fast to the shadow after the substance had van-ished; inasmuch as the plaintiffs, in the Court below, claim to have de-rived title by an absolute deed from Bentinck, under whom the defendants likewise claim title. If the deed was intended as a mortgage, merely to secure the payment of a debt, and Griswold, as one of the creditors of Bentinck, wished to redeem: or if the deed was fraudulently made to defeat *bona fide* creditors, there is a forum in this country fully competent to investigate the subject and to do full, complete and ample justice in the premises, and to that tribunal we must turn over the parties.

In ejectment the general rule is, that the plaintiff must recover upon a legal title in himself, and not because his adversary may have no title, and so far is this idea carried that a practice once existing, of not per-mitting the legal estate to be set up at law, by a trustee, against his *cestui qui trust*, is no longer countenanced in England. 2 Term R. 684;

7 ib. 47; 8 ib. 122; 1 ib. 759. The Courts think it better to keep the jurisdiction herein separate and distinct, lest confusion might eventually be introduced, by inquiries in a Court of law, into complicated equities. Tucker's Notes, book 3, p. 177.

The assignment of Cockran's title bond to Griswold, by Bentinck, would, at most, only raise an equity, and could not prevail at law against one holding by deed under Bentinck, after he had acquired a deed from Cockran. The same may be said of the sheriff's deed, made after the deed made by Bentinck to McKinney, and which was excluded as evidence by the Circuit Court. This deed, if it were unobjectionable in every particular, could not pass the title of Bentinck to Griswold, for if he had any at the date of the deed it was a mere equity, and could not, therefore, be set up as a defence in this action.

Prior to the execution of the deed from Bentinck to McKinney, of 31st July, 1840, Griswold obtained several judgments against Bentinck; one in the Circuit Court on the 23d October, 1838, and four other judgments before justices of the peace, and had filed in the clerk's office of the Circuit Court of Warren county, transcripts of said judgments, which created liens on the real estate of Bentinck; upon those judgments executions were issued, and the land in controversy was sold by the sheriff and purchased by Griswold. These facts, however, do not possess Griswold with the legal estate, or any other title which would avail him as a legal defence in this action. He was, therefore, not injured by the refusal of the Circuit Court to permit him to give them in evidence.

For the foregoing reasons, we are of opinion that the Circuit Court committed no error, and the other Judges concurring, the judgment of the Circuit Court of Warren county is affirmed.