MALLORY WAKEFIELD AND LUCILLE B. WAKEFIELD, APPELLANTS, v. WILLIE W. DINGER, BESSIE I. DINGER AND JOHN M. CARSON AND HIS WIFE, RESPONDENTS.—135 S. W. (2d) 17.

Springfield Court of Appeals.  October 30, 1939.

408

[redacted]

*Henry Warten* for appellants.

*A. H. Garner* for respondents.

TATLOW, P. J. —I. This case was originally appealed to the Supreme Court and by that court transferred to this court. In the opinion transferring the case it is said:

"This is a straight action in ejectment. The petition seeks possession, damages and rents. The answer contains a general denial, and a plea of ownership but asks no adjudication of title for relief. The reply puts in issue defendant's ownership and seeks the relief prayed in the petition. The judgment does not adjudge title in plaintiffs or defendants. [Consult Hecker v. Bleish, 319 Mo. 149, 175(IX), 3 S.

W. (2d) 1008, 1019(IX).] The only ground for our appellate jurisdiction is that title to real estate is involved within the meaning of Art. 6, Sec. 12, of our Constitution. Under our rulings, title to real estate is only incidentally or collaterally involved and appellate jurisdiction is in the Court of Appeals (citing cases)."

This establishes the jurisdiction in this court, notwithstanding any opinion we might have entertained with reference thereto had the appeal been granted to this court in the first instance.

The statement in the opinion of the Supreme Court transferring the case to this court, gives a general outline of the case and of the pleadings.

The petition was filed on the 5th day of June, 1936. It alleges that, on the 6th day of January, 1933, the plaintiffs were entitled to the possession of the premises situated in Newton County, Missouri, described in the petition, and, being so entitled to the possession thereof, defendants afterwards, to-wit, on the 7th day of January, 1933, entered into such premises, and unlawfully withheld from plaintiffs the possession thereof, to their damage in the sum of One Thousand Five Hundred Dollars ($1500), and that the monthly value of the rents and profits of the premises was Twenty-five Dollars ($25).

The answer and reply is sufficiently outlined *supra.*

Trial of the case was had on the 19th day of the regular October Term, 1936, of the Circuit Court in Newton County, before the court without a jury, on which date the court took the cause under advisement until the following February Term of said court.

At the February Term, 1937, the court rendered its judgment but did not make a finding of facts, which it was requested to do by the appellants. After the adjournment of the February Term of court, and in vacation of the court, the judge made a finding of facts, which is contained in the record.

The evidence consists largely of record evidence and undisputed facts.

The plaintiffs' evidence consists of the following:

A general warranty deed from Willie W. Dinger and Bessie I. Dinger, his wife, to Mallory Wakefield and Lucille B. Wakefield, his wife, conveying to the Wakefields the property in controversy, by the entirety, "subject to a deed of trust for $1000, and all building restrictions covering said property". The date of this deed and the consideration therefor are not shown except by the oral testimony in the case.

Mrs. Wakefield, on cross-examination, testified:

"In July of 1929 my husband and I purchased the property in question of Mr. and Mrs. Dinger. They executed a warranty deed to us of the property subject to a one thousand dollar lien; and at the same time, and as a part of the purchase price, we gave Mr.

Dinger a deed of trust back, which was a second deed of trust, securing the note in the sum of nine hundred and fifty dollars, which note I have already identified. . . ."

The deed of trust is dated the 26th day of July, 1929, and is by and between Mallory Wakefield and Lucille B. Wakefield, his wife, of Jasper County, Missouri, referred to therein as the First Party, and L. A. Hamrick of Jasper County, Missouri, referred to therein as the Second Party, and W. W. Dinger of Cherokee County, Kansas, referred to therein as the Third Party. It conveys the property in controversy, subject to a deed of trust of $1000, in favor of the First State Bank of Joplin, Missouri, and then proceeds:

"TO HAVE AND TO HOLD THE SAME, with the appurtenances, unto the said second party and to his successor or successors in this trust, and to his and their assigns, forever IN TRUST, HOWEVER, for the following purposes: Whereas the said Mallory Wakefield and Lucille B. Wakefield, his wife, this day made, executed and delivered to the said third party one Promissory Note of even date herewith, thereby promising to pay to the order of the said third party for value received, the sum of Nine Hundred and Fifty dollars *Dollars,* with interest at the rate of 8% due in monthly installments of $25 each."

It then contains recitals with reference to the payment of other liens, the procuring of insurance, the payment of taxes, etc.

It then provides:

"Now, if said note and the interest thereon be paid when due, and said agreements be faithfully performed as aforesaid, then these presents shall be void, and the property hereinbefore conveyed shall be released at the cost of the said first party; but if default be made in the payment of said note or any part thereof, or any interest thereon, when due, or in the faithful performance of any or either of said agreements as aforesaid, then the whole of said note shall become due and payable, . . . ."

The deed of trust contains the usual and customary power of sale after default and publication of notice of sale.

The sale was to be made to the highest bidder at the *west* front door of the Newton County Circuit Court House in the City of Neosho, Missouri.

The deed of trust was not filed for record until June 20, 1936, at eight o'clock and twenty minutes A. M., which was after the filing of the suit, on June 5th, 1936.

The note was offered in evidence and is as follows:

"$950.00                                             July 25, 1929

"In monthly installments of $25.00 each after date for value received we promise to pay to

"W. W. Dinger or order

"Nine Hundred and Fifty                    Dollars

"At

"To bear interest at the rate of 8 per cent per annum from July 25, 1929. And further hereby agree that if this Note is not paid when due to pay all costs necessary for collection including ten per cent attorney's fees.

"Mallory Wakefield
"Lucille B. Wakefield

(Endorsed on Back)
"Jan. 7, 1933 Credit of Sale under Deed of Trust $100.00
"Jan. 26—1933 the sum of this Note and interest on same hereby waived to $300.00 leaving balance due of $300.00. W. W. Dinger."

The notice of sale is as follows:

## "NOTICE OF TRUSTEE'S SALE

"Default having been made for more than six consecutive months in the payment of dues, interest and fines provided for by a note described in deed of trust executed by Mallory Wakefield and Lucille D. Wakefield, his wife, dated July 25, 1929, therefore, I, the undersigned trustee, at the request of the legal holder and owner of said note, will on SATURDAY, JANUARY 7, 1933, between the hours of 9 A. M. and 5 P. M., at the east front door of the court house in Neosho, Newton County, Missouri, sell at public vendue for cash in hand the real estate in said deed of trust described as follows, to-wit:

"(Describing the real estate in controversy), for the purpose of satisfying said debt and costs.

"L. A. HAMRICK, Trustee."

The affidavit of the publisher was introduced, showing that the notice of sale was published four times in THE NEOSHO TIMES, the first publication being on December 15th, 1932, and the fourth publication being on January 5th, 1933.

The foregoing documentary evidence was offered by the plaintiffs below, and the appellants here.

Observe that the deed of trust does not contain any provision requiring a default "for more than six consecutive months in the payment of dues, interest and fines provided for by a note described in the deed of trust executed by Mallory Wakefield and Lucille D. Wakefield, his wife, dated July 25, 1929", etc.

The recitals in the notice are in the conventional form to foreclose a Building and Loan deed of trust, but the deed of trust, itself, is in the conventional form providing for the securing of an ordinary promissory note.

The undisputed testimony in the case is as follows:

Lucille B. Wakefield, one of the plaintiffs, testified:

"I am one and the same as the Lucille B. Wakefield named in the warranty deed which was executed to me and my husband by W. W. Dinger and his wife, and which deed has already been offered in

evidence. Mallory Wakefield named in that same deed is one and the same as the plaintiff herein. Upon delivery of this warranty deed to me and my husband, we entered into possession of the premises (described in the petition). . . .

". . . We lived there until November 15th or 16th. We left the premises vacant, took our furniture out of the house, intending to stay away about three months; and we stayed away until March of 1933. When we came back we did not move back into the house as Mr. Dinger had foreclosed the mortgage in the meantime."

Mr. W. W. Dinger, one of the defendants below, and respondent here, testified:

"Q. Do you know when they left the premises? A. Well, I don't know the exact date. I don't remember, because I went out there and it was vacant, and the neighbors told me it had been vacant for some time."

He further testified:

"The property was vacant when I went out there in the *fall of 1932.*"

Observe that the testimony of Lucille B. Wakefield, one of the appellants, that they lived on the property until November 15th, or 16th, 1932; that they left the premises vacant, took their furniture out of the house and stayed away until March, 1933, when they came back; that they did not move into the house as Mr. Dinger had foreclosed the mortgage in the meantime, and the testimony of Mr. W. W. Dinger, heretofore quoted, that, when he went out there in the fall of 1932 he found the property vacant and took possession, is undisputed. Hence, on the undisputed evidence of both parties he took the peaceful possession of the vacant property, and the exact date he did so is fixed by inference as in the fall of 1932.

If there is any conflict in the evidence it is with reference to the payments which were actually made on the note and not as to whether there was any default in the payment of the note at the time that W. W. Dinger took the peaceful possession of the vacant property.

Appellants say in their brief:

"The interest on the note amounted to approximately $217.76 which was, like the principal sum, to be paid out in monthly installments of $25 each. (The note not stipulating otherwise). As hardly a four months period intervened from the date of the appellants' last payment on their said note to the date of the purported foreclosure on January 7, 1933, it is at once apparent that appellants could not have been in default."

Mrs. Lucille B. Wakefield's testimony was the only testimony offered by the plaintiffs with reference to the payments, and was as follows:

". . . , we gave Mr. Dinger a deed of trust back, which was a second deed of trust, securing the note in the sum of nine hundred and fifty dollars, which note I have already identified. We paid twenty-five dollars each month on this note, and our last payment to Dinger was in the month of September, 1932, the last of September or the first part of October, 1932. All payments on the note were kept up to date at the time of the last payment. . . ."

Respondent W. W. Dinger testified with reference to this:

"Q. 1932. And when, prior to that date, the fall of 1932, had you received payment, if any, on this property? A. I don't think I received payment during the last twelve months that they were there."

This is the entire conflict in the evidence as shown by the record. It is immaterial in this case what the truth is with reference to this fact.

II. The assignments of error are: That the foreclosure sale was void because there was no default in the payment of the promissory note secured by the deed of trust; that the sale was made, not at the *east* front door of the court house as provided in the deed of trust, but at the *west* front door; that there was no default in the payment of the note at the time of the sale; that the deed of trust had not been filed in the office of the Recorder of Newton County at the time of the sale, and was not filed until after the suit was brought; that the court erred in admitting incompetent and prejudicial evidence; and that the court further erred in not making findings of fact before the rendition and entry of the judgment in the case.

It might be well to say in the beginning that, in our opinion, the trial court reached the only conclusion and rendered the only judgment that could possibly have been rendered on the undisputed facts in this case, and, this being so, the alleged errors are necessarily harmless and constitute no ground for a reversal of the judgment.

The appellants' theory of the case is that they bought the property from the respondent Willie W. Dinger, subject to a first mortgage of $1000, and gave a second purchase price mortgage for $950, payable in monthly installments of $25 each, to bear interest at the rate of eight per cent per annum from July 25, 1929, the date of the note, and that they paid $25 each month on the note, and that the last payment was made the last of September or the first of October, 1932. They do not claim to have paid any interest on the note but claim that the interest was payable in installments of $25 per month and that all of the interest was not due on January 7, 1933, the date of the sale, and, hence, there was no default in the deed of trust even though they made no monthly payments of $25 on the interest, because the provisions of the deed of trust were ineffectual to accelerate the payments, as there was no such provision in the note and, hence, the foreclosure sale was void because there was no default, and for the

reason that the property was sold at the wrong court house door, and the deed of trust was not recorded before the sale.

In our judgment this theory of the case is without the slightest support on principle or precedent. The fundamental error in this theory is that, even if the foreclosure sale were entirely void (which it is not), neither the deed of trust nor the note was void as long as anything. remained due thereunder. It entirely misconceives the character of a mortgage or deed of trust either under the common law or under the Missouri decisions.

". . . . By the strict doctrine of the common law, unmodified by the intervention of equity for the protection of the debtor, a mortgage was regarded as passing the whole legal title to the estate pledged to the mortgagee, who became the owner of it, although his title was liable to be defeated on a condition subsequent. He was also entitled at all times to the possession of the estate, and could maintain ejectment against the mortgagor, before as well as after default, unless he had agreed that the latter might remain in possession. . . . . . . . , the estate of the mortgagee, by performance of the condition, determined and ceased. But as the legal title was in him, the estate was not revested in the mortgagor by the mere act of payment or other performance, but it was necessary that the mortgagee should reconvey to him by deed. On the other hand, if the debtor failed to pay or perform at the stipulated time, that is, if there was a breach in the condition, the title of the mortgagee become absolute and indefeasible, and the mortgagor ceased to have any right or interest in the estate. . . ." [41 C. J., Title "Mortgages," sec. 1, p. 274.]

This strict common law rule was never in force in this State. Concerning it, the Supreme Court said, nearly a century ago in the case of Walcop & Griswold v. McKinney's Heirs, 10 Mo. 230:

"The counsel for the appellants assume that the deed under which the appellees claim to have title, although absolute on its face, was intended by the parties as a mortgage, and being so intended it will be taken and treated as such by the court. Having thus determined the character of the deed, it is then argued that a mortgage, under our statute, is a simple security for a debt, and does not, as in England, pass such a title as will enable the mortgagee to maintain an action in ejectment.

"There is no question but that our statute has greatly changed the character of mortgages, and the rights of parties under them, but still the authority referred to does not sustain the doctrine contended for by the counsel. In the case referred to, in 1 J. J. Marsh, 257, are stated some of the principles which characterize mortgages in this county at the present time; as that a payment of the mortgage debt extinguishes the mortgage at law as well as in equity. The mortgage is but a chattel interest. The right to the money passes

to the personal representatives of the mortgagee, and his receipt of the debt is good against the heir. The wife of the mortgagor is dowable, and of the mortgagee is not, even after forfeiture. The estate mortgaged may be sold to pay the mortgagor's debts, but not for the debts of the mortgagee. The debt cannot be separated from the mortgage. The mortgagee, after forfeiture, may maintain an ejectment against the mortgagor, to recover the estate mortgaged, that he may have the benefit of the profits.''

This case accurately describes the characteristics of a mortgage or deed of trust and, in our opinion, has never been changed or modified by any subsequent opinion of the Supreme Court. The rule that the mortgagee, after condition broken, can maintain an action in ejectment against the mortgagor to recover the estate mortgaged that he may have the benefit of the rents and profits, is as much the law of this State as it was in 1846 when that opinion was rendered, and, for such a much stronger reason, after forfeiture he may take the peaceful possession of the property, as in the instant case, so that he may have the benefit of the rents to apply upon whatever remains due on the mortgage debt. Hence, as long as anything remains due on the mortgage and the mortgagee is in possession, the mortgagor cannot recover in ejectment, or, in other words, the only possible theory upon which the mortgagor can resort to ejectment under such circumstances, is to show that, at the time of filing such an action, the mortgage had been fully paid, or, if the debt is payable in installments, he must at least show that all the installments that were then due had been paid or tendered. He cannot successfully claim that the mortgagee cannot bring ejectment or take the peaceful possession until all the installments are past due, as the appellants contend in the instant case. This is so, even though it is the law of the State, as contended by appellants, that there can be no foreclosure under the acceleration provision in the deed of trust where there is no acceleration clause in the note, for the reason that the note, and not the deed of trust, controls. It is not necessary for us to decide the correctness of this contention in the instant case, and we do not decide it.

The appellants' contention that the irregularities in the foreclosure proceedings render the sale absolutely void so that the mortgagor can maintain ejectment, is not only supported by any decision in this State but is in direct conflict with several decisions of the Supreme Court of Missouri.

In Adams v. Carpenter, 187 Mo. 613, l. c. 634, 86 S. W. 445, l. c. 451, the court says:

''It is well settled that a trustee's deed foreclosing a deed of trust upon land given to secure the payment of a note, will pass the legal title, though the land be advertised for sale, and in fact sold, in a shorter space of time, or less number of days, than provided by the

deed of trust; for when the trustee conveys the land by deed it passes the legal title notwithstanding the sale may be in violation of the provisions of the deed of trust. [Schanewerk v. Hoberecht, 117 Mo. 23, 22 S. W. 949, 38 Am. St. Rep. 631; Hume v. Hopkins, 140 Mo. 65, 41 S. W. 784; Long v. Long, 141 Mo. 352, 44 S. W. 341; Biffle v. Pullam, 125 Mo. 108, 28 S. W. 323; Kennedy v. Siemers, 120 Mo. 73, 25 S. W. 512 . . .]''

It is further said in that case:

''The sale by the acting trustee was at most only irregular, not void, and could only be taken advantage of by the mortgagor, or those claiming under them, by an action to redeem the land, accompanied by an offer to pay the indebtedness secured by the mortgage. . . .'' [86 S. W. l. c. 451.]

Observe that it is there directly held that, notwithstanding the irregularities complained of in the instant case, the sale is not only irregular and can only be taken advantage of by the mortgagors or those claiming under them, by an action to redeem the land, accompanied by an offer to pay the indebtedness secured by the mortgage. As long as there is anything remaining due under the mortgage, even though the foreclosure sale is irregular and void so far as cutting off the right of the mortgagor to redeem is concerned, it is still not void so as to entitle the mortgagor to possession without paying the mortgage indebtedness, or at least the amount that is due at the time he seeks to recover possession.

If the foreclosure sale were absolutely *void*, as appellants contend, its legal effect would be the same as if it had never been made. It would be entirely non-existent. This being so, when the mortgagee took possession, his act in doing so would be referable, not to a sale that never had any existence or any legal force or effect, but to the mortgage or deed of trust that was still in existence and which had not been fully paid. In other words, his act would be referable to the right that he had, instead of one which he did not have. In this case it would seem that he took possession before the attempted foreclosure.

The appellants rely upon the recent decision of the Missouri Supreme Court in the case of Marsden v. Nipp, 325 Mo. 822, 30 S. W. (2d) 77, to escape the conclusion announced by the Supreme Court in the cases of Schanewerk v. Hoberecht, 117 Mo. 22, 22 S. W. 949, and Adams v. Carpenter, 187 Mo. 613, l. c. 636, 86 S. W. 445, l. c. 451, that a foreclosure sale, however irregular ''could only be taken advantage of by the mortgagor, or those claiming under them, by an action to redeem the land, accompanied by an offer to pay the indebtedness secured by the mortgage.'' They rely entirely upon an observation of the court in that case, following the citation of the Schanewerk case, *supra,* and other Missouri cases, as follows:

". . . . The above rule should be limited, we think, to the legitimate exercise or the attempt to exercise by the trustee the powers conferred by the deed of trust." [30 S. W. (2d) l. c. 82.]

This observation means and can only mean that it applies in the opinion of the writer of that opinion, only where there is a *legitimate* attempt by the trustee to exercise the powers conferred by the deed of trust. It does not undertake to define what is a legitimate exercise of the attempt but if the deed itself purports to exercise the power conferred in the deed of trust pursuant to public notice and a public sale, it would certainly seem to be a *legitimate* attempt by the trustee to exercise the power. If the trustee, instead of attempting to exercise the power, should exercise a quitclaim deed to the mortgagee, it would not show an attempt to execute the powers, and this is no doubt what the court meant by that observation. But even assuming in such circumstances that a quitclaim deed by the trustee to the mortgagee would not enable the mortgagee to bring an ejectment suit in order to collect the rents to apply upon the mortgage indebtedness, it would not sustain the appellants' contention in the instant case. The mortgagee in the instant case did not have to bring ejectment to get possession. He took the peaceful possession and, if his possession were not referable to the foreclosure sale and deed thereunder because absolutely void and the same as if it had never been made or attempted to be made, his possession would be referable to his unpaid note and deed of trust; this, undoubtedly, if he took possession before the attempted foreclosure, which it would seem he did in this case. There is certainly nothing in the Marsden case to the contrary.

In addition to this, the Marsden case does not undertake to overrule, and does not overrule, the Schanewerk case, nor the cases following it. In the next place, the observation, whatever it may mean, was a mere *obiter dictum*, as is clearly shown by the opinion itself. The 4th paragraph of the opinion (325 Mo. l. c. 832, 30 S. W. (2d) l. c. 81) deals with this question:

"IV. Defendant present that the evidence does not substantively or sufficiently show that the trustee, A. O. White, was permanently absent, or that he refused to act, or that he was unable to perform the duties and powers given in the deed of trust, or that he was deceased, or that the legal holder of the note requested the sheriff to act as trustee, or that the holder of the note applied to the Circuit Court of Jefferson County for the appointment of a successor trustee, or that the holder of the note applied to a court of equity to reform the deed of trust as to the provision, that upon default the sale was to be made at the post-office door in the City of St. Louis, Jefferson County, Missouri.

"Defendants also present that the sheriff's (trustee's) deed to plaintiff is fatally defective and void, because it fails, first, to re-

cite, with respect to the notice given, any number of days; second, to recite that the notice of sale was published in Jefferson County; third, to show that the deed was signed by the sheriff as successor-trustee and as the then acting sheriff; and, fourth, to recite that Ray Williams was the then acting sheriff of Jefferson County.

"It may be, although we do not so decide, that defendants' contentions as above related are sound. Notwithstanding the contentions, and in spite of the fact that they may be sound, the defendants, by their assignment to McCann, have ratified the foreclosure sale and have become estopped from maintaining that the trustee's deed to plaintiff was ineffective to convey the real estate. The written assignment by defendants to McCann, with respect to $1700 surplus remaining in the hands of the sheriff, states that Ray Williams was the sheriff of Jefferson County, and that he was the successor-trustee, as well as the default of defendants in the payment of the note secured by the second deed of trust. Inasmuch as Williams, the sheriff, was by the assignment admittedly the successor-trustee, it is evident that he became such by virtue of the deed of trust foreclosed. As he was the trustee, the conveyance of the property by him as such vests the title in his grantee, even though a breach of trust occurred. [Schanewerk v. Hoberecht, 117 Mo. 22, 22 S. W. 949, 38 Am. St. Rep. 631; Hume v. Hopkins, 140 Mo. 65, l. c. 73, 41 S. W. 784; Feller v. Lee, 225 Mo. 319, 124 S. W. 1129.] The above rule should be limited, we think, to the legitimate exercise or the attempt to exercise by the trustee the powers conferred by the deed of trust."

When you read all that the court says with reference to this point it will be observed that it is stated, in so many words, that it did not decide that the defendants' contention in that case was sound; that is, that the foreclosure was absolutely void. The foreclosure in that case had all of the infirmities that are present in the instant case and there is no escape from the conclusion that, if that was a legitimate attempt to exercise the power of sale by the foreclosure deed based thereon, in the instant case the sale and deed likewise constituted a legitimate attempt to exercise the power, so as to come within the observation there made.

The appellants in the instant case cite two cases to sustain their right to maintain ejectment. They are: Hammerslough v. City of Kansas, 57 Mo. 219, and McClanahan v. West, 100 Mo. 309, 13 S. W. 674.

The Hammerslough case was a condemnation case by the City of Kansas, prior to the Constitution of 1875, requiring the just compensation to which the property owner is entitled to be ascertained by a jury or board of commissioners, and paid to him or into court for him before disturbing his possession.

In that case the city was seeking to take possession before paying the compensation and the property owner brought injunction. The court said:

"The plaintiff brought an action in the Common Pleas Court of Kansas City, to enjoin the city from using a lot of plaintiffs as a street until it was paid for. The petition was filed in 1869. It alleges that in 1867, the plaintiffs owned lot No. 4 in Krey's sub-division and had possession, when the city passed an ordinance condemning the lot as a street; that the city in 1869 was preparing the lot as a public highway without consent of the plaintiffs, and without paying any damages.

"The answer sets up an agreement with the city authorities to convey the lot to the city for $75 per foot front, with interest at 10 per cent. from Sept. 1867, and avers, that the city has ever been ready and is now willing to pay this for the lot and tendering the amount due for the lot, that the city has improved the lot and prays that the plaintiffs convey.

"At the hearing it was admitted that the plaintiffs agreed with the city Mayor to sell the lot for $75 per foot and 10 per cent interest from date of agreement, but the money was not paid.

"The city commenced work on the lot in 1869. The finding of the court was, that the city did not pay for the lot, and therefore grants a perpetual injunction.

"The remedy of the plaintiffs, if they claim the sale to the city was void, was an action of ejectment, and if they admitted the sale, they could sue for the purchase money. We see no grounds for an injunction. The plaintiffs are willing to accept a judgment for the purchase money and interest, and undoubtedly they are entitled to this, but the court has no power to give such a judgment." [57 Mo. l. c. 221.]

That case clearly holds that, if the sale were void, the plaintiffs had the election to so treat it, and, if they did so elect, to bring a suit in ejectment, or they could elect to treat the sale as valid and bring a suit to recover the amount that the city agreed to pay and which the property owner was willing to accept, but they could not enjoin the sale. It does not hold, or intimate, that the appellants in the instant case, by claiming that the sale was void, when it was not but was at most only voidable if they elected to so treat it, could bring ejectment to recover possession against a mortgagee who was in the peaceful possession of the property and whose mortgage had not been fully paid, and who was entitled to the rents until his mortgage was fully paid and discharged. It does not deal with the rights of a mortgagee or a mortgagor. There was no mortgage involved in the case and, hence, it is not in point in the instant case.

In the McClanahan case it is held that the remedy of one claiming against a sale under a partition proceeding, void on its face, is by ejectment.

In that case, if the sale was void there was nothing left to justify the possession of the claimant. In the instant case, whether the sale was absolutely void or only voidable, the deed of trust and the note which has not been fully paid, entitled the respondents to retain possession until the debt was fully paid.

That case does not deal with the rights of a mortgagee in possession whose mortgage has not been fully paid. The mere claiming · that a foreclosure sale is void does not make it so; but, even if void, so far as cutting out the right of redemption is concerned, the mortgagor's remedy is redemption and not ejectment.

That this is so is clearly shown by a decision of the Supreme Court, much later than the Marsden case, *supra*, Eurengy v. Equitable, etc. Corp., 107 S. W. (2d) 68, 1. c. 71, where it is said:

"In this State a mortgage or deed of trust conveys no estate in the land, but merely creates and evidences a lien thereon to secure the debt. Until the mortgagor defaults and the mortgagee forecloses or takes possession the mortgagor continues as the owner of the estate and has a right to lease, sell, and in every respect deal with the mort- · gaged premises as owner. . . ."

This case clearly shows that, where the mortgagor defaults in the payment of the mortgage indebtedness in whole or in part, and the mortgagee takes peaceful possession, the mortgagor cannot recover in ejectment as long as any part of the mortgage indebtedness remains due and unpaid, and that this rule is equally applicable to a deed of trust.

The errors, if any, of the trial court in admitting or rejecting evidence, or in failing to make findings of fact, could not, and do not affect the result that much be reached in this case and are, therefore, entirely harmless.

There is some evidence in the case tending to show a settlement and confirmation of the foreclosure sale; it is claimed by the appellants that the alleged settlement was invalid for the reason that the property was held by the entirety and it was made by the wife without her husband joining. It does not support the judgment for the reason that it is an action at law and the court was requested to make the statutory findings of fact, which it did not do. Its finding, after judgment and in vacation of court, is not a compliance with the statute. Hence, we do not pass upon the question as to whether there was or was not a valid settlement.

The appellants in this case do not seek to redeem the property and the question of their right to do so is not before us and we do not pass upon it. Nothing said in this opinion is intended as either affirming or denying the right of the appellants to redeem the property. This opinion is limited to the holding that, on the undisputed evidence in the case, the appellants were not entitled to maintain ejectment.

The judgment of the trial court should be, and is, affirmed. *Smith* and *Fulbright, JJ.*, concur.