**PINE LAWN BANK AND TRUST CO. and Lillian Kelley,
Plaintiffs–Appellants–Respondents,**

v.

**M. H. & H., INC., a corporation et al.,
Defendants–Respondents–Appellants.**

Nos. 40364, 40385.

Missouri Court of Appeals,
Eastern District,
Division One.

July 29, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1980.

---

1. Respondent made alimony payments after the divorce until October 27, 1975.

W. W. Sleater, M. C. Sleater, Sleater & Sleater, Clayton, Charles W. Medley, James E. Alexander, Medley, Alexander & McIntosh, Farmington, for plaintiffs–appellants–respondents.

Jerome M. Rubenstein, Bryan, Cave, McPheeters & McRoberts, Earle B. Leadlove, Barnard & Baer, St. Louis, for defendants–respondents–appellants.

SNYDER, Judge.

Plaintiff Pine Lawn Bank and Trust Company (Pine Lawn),[1] holder of a second deed of trust given by defendants' lessor, who was in default, sued defendants, M. H. & H., Inc. (MHH), Bonne Foods of Bonne Terre, Inc. (Bonne Foods) and individual lease guarantors for rent of a supermarket building for the period between April 1, 1974 and August 31, 1975. The trial court awarded plaintiff rent in the sum of $21,000 plus accrued interest of $3,516.50 for the period between September 1, 1974 and August 31, 1975 but found that Pine Lawn failed to establish it was in possession of the rented premises before September 1, 1974, and therefore, was not entitled to rent accruing between April 1, 1974 and August 31, 1974. Pine Lawn and MHH appealed. Pine Lawn's motion to combine the appeals was granted.

In its appeal plaintiff[2] alleges that the trial court erred in finding that it was not entitled to the rents accruing between March and September 1974 because: (1) plaintiff had paid interest due on the first mortgage and was subrogated to the rights of Diversified Mortgage Investors (DMI), the first mortgagee, under a management agreement between the mortgagor and its

1. Although Lillian Kelley was joined as plaintiff and as appellant because title to the shopping center property was taken in her name as nominee for Pine Lawn Bank and Trust Co. upon foreclosure by the bank, the opinion will refer only to Pine Lawn Bank and Trust Co. as plaintiff in the singular.

2. Appellant Pine Lawn Bank and Trust Co. will be referred to as plaintiff or by name in this opinion. The defendants will be referred to by name or as defendants collectively.

agent by which rents were to be first paid to the first mortgagee; (2) J.M.C. Investments, Inc. (JMC), the mortgagor and owner of the premises, had given up its right to the rents by virtue of a management agreement and plaintiff was entitled to the rents because JMC was in default on the deed of trust note payable; (3) JMC's management agreement required that the rents should be paid to plaintiff, and thus it had a superior right to the rents; and (4) plaintiff, as mortgagee in possession, was in actual possession of the property after March of 1974 and therefore was entitled to the rents.

Defendants failed to file a brief but were permitted by the court to adopt the supplemental brief of the trustees of DMI who filed a brief after being given leave by the court to appear as amicus curiae. In it they contend the court erred in awarding judgment to the plaintiff for the rents for the period February 1, 1975 through August 1, 1975 because those rents had been assigned to DMI.

Because Pine Lawn took action equivalent to entering into possession on or about April 1, 1974, the judgment in favor of defendants as to the rent for the period April 1, 1974 through August 31, 1974 is reversed. In all other respects the judgment is affirmed.

Plaintiff held a second deed of trust on the Bonneville Plaza Shopping Center in Bonne Terre, Missouri. The first deed of trust was held by DMI. The shopping center was owned by JMC, which had purchased it in March 1973 from Frank and Bernice McDowell. Defendant Bonne Foods leased space for a grocery store within the center. It was assignee of a lease originally entered into between the McDowells and defendant MHH.

On April 24, 1973, JMC appointed McHarevo Development Corporation (McHarevo) its agent to manage the center, collect rentals, and make disbursements for the center. On May 29, 1973, JMC borrowed $1,300,000 from DMI and gave DMI a promissory note for that amount and a first deed of trust on the shopping center. On May 30, 1973, JMC borrowed an additional $300,000 from plaintiff and gave as security its note and a second deed of trust on the shopping center property.

At plaintiff's behest, the management agreement between JMC and McHarevo was amended to provide that McHarevo should disburse the rental receipts to: (1) pay sums due DMI under its deed of trust; (2) pay the real estate taxes; (3) pay premiums for insurance on the premises; and (4) remit the balance, if any, to plaintiff. Betty Meyers, an officer of McHarevo, collected the rents and paid them to JMC. According to Mrs. Meyers, McHarevo did not pay any part of the rent money to DMI or plaintiff. Furthermore, as admitted by Donald Caifano, president of JMC, JMC did not make any payments on its note to plaintiff. There was undisputed evidence that JMC was in default prior to April 1, 1974 on Pine Lawn's note and second deed of trust.

On March 27, 1974, Jerome Rubenstein, attorney for DMI, wrote to the tenants of the shopping center and advised them to make all future rent checks payable to DMI and to send them to Don Shrum and Associates. On May 6, 1974 he sent another letter instructing the tenants to make the checks payable to DMI and to send them to plaintiff. McHarevo was not notified of these changes, but a tenant showed one of the letters to a representative of the company and McHarevo did not collect any rents after March 1974. Plaintiff collected rent from some of the other tenants during and after April 1974, but defendant Bonne Foods did not make any payments to plaintiff. Rather, due to the confusion generated by the letters, the company made payments in escrow to the General Grocer Company, a wholesaler of Bonne Foods which was taking care of its bookkeeping.

Plaintiff's secretary, Lillian Kelley, ran an escrow account into which she deposited receipts and disbursed funds for payment of shopping center expenses. Plaintiff began making payments for expenses of the shopping center in June 1974. The bank paid the utility and other bills as well as collecting the rents. The first rent checks were received in May, at least two of them for

April rent. Expenses paid by plaintiff for the center between May 1974 and December 26, 1975 exceeded receipts by $13,037.42.

In August 1974 DMI advertised foreclosure of its deed of trust. Plaintiff paid $32,500, the amount of 90 days' interest on JMC's note to DMI, in exchange for DMI's postponement of the foreclosure for that length of time. A second ninety–day extension was also granted after that time, upon the bank's further payment of $32,500 to DMI.

Pine Lawn foreclosed on its deed of trust on October 25, 1974 and took title in the name of Lillian Kelley as nominee. DMI foreclosed on its deed of trust on August 18, 1975, and the trustees conveyed the property to DMI by deed dated September 9, 1975.

On September 2, 1975, Mr. Rubenstein requested that General Grocer Company send the rentals in Bonne Foods' escrow account to DMI in care of him. General Grocer complied, and DMI agreed to indemnify the company should Bonne Foods be liable to another for the rent.

Pine Lawn brought suit against MHH, Bonne Foods and individual guarantors Robert L. McPhail and Dorthelia McPhail, husband and wife, Gene Gannon and Eilien Gannon, husband and wife, and Jerry Gannon and Barbara J. Gannon, husband and wife. The trial court rendered judgment for plaintiff for the rent due for the period September 1, 1974 through August 31, 1975 but ruled that plaintiff failed to establish that it was in actual possession of the leased premises from April 1, 1974 to August 31, 1974. Both plaintiff and defendants appealed.

No question has been raised concerning the validity of the guaranty signed by the individual guarantors and the final judgment will be rendered against all defendants.

Only two issues need be considered in the resolution of this case with its multi–party aspects and complicated factual and financial situation. The first is the question of plaintiff's possession of the shopping center for the period from April 1, 1974 to August 31, 1974. The second is the question of the alleged assignment of rents which defendants contend takes precedence over any right plaintiff had to collect the rents. They maintain the trial court erred in awarding plaintiff judgment for the rents for the period February 1, 1975 to August 1, 1975 because the rents should have been paid to DMI under the assignment.

■ The judgment in this court–tried case must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law. Rule 73.01.3. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ This court finds that Pine Lawn took action equivalent to possession of the shopping center premises beginning on April 1, 1974 and therefore, is entitled to a judgment for the rent from April 1, 1974 to August 31, 1974. This conclusion is reached after full consideration of Rule 73.01.3(b) requiring appellate courts to give due regard to the opportunity of the trial court to judge the credibility of witnesses and the admonition in *Murphy v. Carron, supra,* at 32, that: "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong."

The evidence of plaintiff's possession of the shopping center premises for the period April 1, 1974 through August 31, 1974 was indeed weighty. Lillian Kelley, secretary of the plaintiff bank, testified that the bank was in touch with the situation and that Mr. Douglas Dodds went down to the center. Douglas Dodds was president of the plaintiff bank. In July the plaintiff paid electric bills for the period between March 19 and April 17, 1974. The bank also paid other utility bills during the period between April 1974 and July 1975.

Plaintiff actively sought to collect rents from March 19, 1974 to August 19, 1975. Mr. Leahy, a representative of the bank, went to Bonne Terre and managed an of-

fice at the shopping center for Pine Lawn and there collected the rents. There is evidence that McHarevo quit collecting rents in March and Betty Meyers, who had formerly worked for McHarevo, subsequently began to collect rents for plaintiff.

The strongest evidence of plaintiff's possession of the shopping center is plaintiff's Exhibit "O" which is a summary of the Bonneville Plaza escrow account which was kept by plaintiff. It shows that plaintiff received $73,706.85 in rents during the period from May 10, 1974 to July 2, 1975, some of them for the month of April. The account shows a list of disbursements over two–and–a–half letter–sized pages long, single spaced, well over a hundred items, which were made on behalf of the shopping center from the period July 12, 1974 to July 24, 1975. A wide variety of expenses are shown including taxes, utilities, what would seem to be repairs and maintenance, and many others. The total disbursements were $88,275.89. The total receipts were $75,306.87, including rent of $73,706.85. Plaintiff charged off the difference of $13,037.42.

The only evidence to refute the fact of plaintiff's possession beginning in April was some testimony by Donald Caifano, president of the defaulting JMC, in which he says that he instructed tenants to make rent checks payable either to DMI or JMC or deposit the rent in escrow. There was no evidence as to whether the tenants actually complied with Caifano's instructions except in the case of Bonne Foods.

There was in evidence a letter from Jerome M. Rubenstein, attorney for DMI, dated March 27, 1974 instructing the tenants of the Bonneville Plaza Shopping Center to make all future rental payments to DMI and send the checks to Don Shrum and Associates. On May 6, 1974, Mr. Rubenstein wrote to the tenants and changed the mailing directions and told the tenants to send all future rental payment checks to the plaintiff, but to make them payable to Diversified Mortgage Investors (DMI). Again, the response made by the tenants to these letters is not in evidence. Some of them may have followed the instructions but a great many of them made the payments to Pine Lawn which used the funds for payment of the expenses of the shopping center. Pine Lawn actually collected rents during that period from ten tenants out of a total of seventeen. There was no evidence in the record, except in the case of Bonne Foods, concerning payments by the other seven tenants. The record does not disclose to whom any payments were made or whether indeed payments were made at all by the tenants, other than Bonne Foods, who did not remit to Pine Lawn.

■ Did Pine Lawn have a right to possession of the mortgaged shopping center? The general rule is that a mortgagee after default by a mortgagor has the right to possession of the mortgaged premises for the purposes of applying the rents and profits to the discharge of the mortgage debts. *In re Stuckenberg*, 374 F.Supp. 15, 17[2] (E.D.Mo. 1974), aff'd 505 F.2d 1250 (8th Cir. 1974); *Grafeman Dairy Co. v. Mercantile Club*, 241 S.W. 923, 927[1–3] (Mo. banc 1922); *Wakefield v. Dinger*, 234 Mo.App. 407, 135 S.W.2d 17, 21–22[5–7] (1939); *Netzeband v. Knickmeyer–Fleer Realty & Inv. Co.*, 103 S.W.2d 520, 522[1–4] (Mo.App. 1937). Pine Lawn's note and deed of trust were in default. Therefore it had a right to possession of the premises.

This court finds that plaintiff, because of JMC's, the mortgagor's, default had a right to possession of the shopping center premises and that it was against the weight of the evidence to find that plaintiff was not in possession of the premises for the period from April 1, 1974 through August 31, 1974. Further, there was substantial evidence to support a finding that plaintiff took action equivalent to possession by maintaining an office at the shopping center, collecting rents from the majority of the tenants and paying the expenses of the shopping center. Therefore, the trial court's judgment in this respect is reversed and the cause remanded with instructions to enter judgment in favor of the plaintiff for the rent due from defendants from the period April 1, 1974 to August 31, 1974.

In view of the holding on plaintiff's right to possession, it is unnecessary to speak to the other points raised by plaintiff and no opinion is expressed as to plaintiff's alleged subrogation to DMI's rights and the claimed rights of plaintiff under the McHarevo management agreement.

Little need be said about the point raised in the supplemental brief of the amicus curiae and defendants. They claimed the court erred in finding that defendants were indebted to plaintiffs for the rent due February 1, 1975 through August 1, 1975 because the rents had already been assigned to DMI. DMI did not claim the rents from July 24, 1974 through and including January 27, 1975. They specifically agreed to waive their claim for rentals for that period. Thus there is no dispute about the rent from September 1, 1974 to January 31, 1975, no appeal having been taken by the defendants from that portion of the judgment of the trial court.

Defendants base their contention on an assignment which is not in evidence. There is nothing in the record to show that there was an assignment of the rents by JMC to DMI, although the assignment is referred to in their brief. They also quote two other cases which this court decided, the cases having arisen out of the same financial and legal quagmire as the case under review. *Kelley v. Schnebelen*, 545 S.W.2d 332 (Mo.App. 1976); *Pine Lawn Bank and Trust Co. v. Schnebelen*, 579 S.W.2d 640 (Mo.App. 1979). However, these cases do not involve the same legal issues which are before this court.

The petition in *Pine Lawn Bank and Trust Co. v. Schnebelen* sought to have Pine Lawn's second deed of trust declared to be superior to the first deed of trust. In the opinion the evidence of a conditional assignment from JMC to DMI was merely mentioned in the recitation of the facts and was not pertinent to the court's final decision. Further, the decision in *Pine Lawn Bank and Trust Co. v. Schnebelen* was handed down on January 30, 1979, more than a year after the trial court's judgment was entered in the case under review.

*Kelley v. Schnebelen* was a suit in equity brought to enjoin the foreclosure of the first deed of trust and stop the sale of the shopping center property. The decision in *Kelley v. Schnebelen* mentions the fact that there was evidence in that case of a conditional assignment by JMC to DMI, but that fact was not an "ultimate fact" decided by the court and had minimal influence on the decision to affirm the trial court's dismissal of the injunction petition. *Gerhardt v. Miller*, 532 S.W.2d 852, 854[3–7] (Mo.App. 1975). There is no question of res judicata here. Further the assignment in *Kelley v. Schnebelen* was conditional and there is no evidence in the record before this court of either the applicable conditions or whether the conditions were met so as to make the assignment effective.

The assignment which is essential to the claim of error of defendants is not before the court and there is nothing in the *Kelley v. Schnebelen* decision which can be relied on by defendants in the present case. Therefore, the appeal of the defendants must be denied.

A motion to dismiss the first amicus curiae ·brief was taken with the case. It is granted because the statement of facts in the brief and the points relied on failed to comply with Rule 84.04(c), (d) and (h). The outcome of the case would have been the same even though the motion to dismiss the brief had not been granted.

The judgment of the trial court awarding plaintiff recovery from defendants of rent payments for the period from September 1, 1974 to August 1, 1975 is affirmed. The judgment for defendants for the rent for the period from April 1, 1974 to August 31, 1974 is reversed and remanded with instructions to enter judgment in favor of the plaintiff and against the defendants for the rent due for that period.

STEWART, P. J., and SIMON, J., concur.